## A05A2314. FRASARD v. THE STATE.

(629 SE2d 53)

BARNES, Judge.

Michael Frasard appeals his conviction for aggressive driving in violation of OCGA § 40-6-397 (a).[1] Frasard represented himself at trial, but, following his conviction, he retained counsel who filed a motion for new trial. After the trial court denied this motion, this appeal followed. He now contends the trial court failed to investigate and establish that he knowingly and voluntarily waived his right to counsel, that the trial court erred by failing to charge the jury on justification, and that the verdict was contrary to the evidence. We disagree, and affirm.

1. Viewed in the light most favorable to the verdict, *Taylor v. State*, 226 Ga. App. 254, 255 (485 SE2d 830) (1997), the evidence shows that early one morning, after a SEC Championship football game,[2] as part of a program to curtail street crime in connection with the game, an Atlanta police officer, in uniform, was traveling in an unmarked police car at approximately five miles per hour on Peachtree Center Avenue. The officer was one lane away from the curb on the left hand side of the four-lane street because he was watching a woman who appeared to be followed by two men.

In his car, Frasard approached from behind the officer's car and came up so close to the officer's car that the officer could not see Frasard's headlights. When the officer did not go faster, Frasard followed closely behind the officer and began honking his horn and moving his car back and forth behind the officer's car. Although the officer motioned for him to go around, Frasard refused to do so. In the officer's opinion, Frasard could have passed him at any time. The officer recalled that the only vehicles on the street were Frasard's and his own, and Frasard had ample room to go around him.

When they had to stop for a red light, the officer got out of the police car and approached Frasard to see if he needed assistance. At that point, Frasard yelled at the officer, "You need to get out of my way. You have no right to go that slow." The officer then called for a marked police car and Frasard was cited for aggressive driving.

---

[1] A person commits the offense of aggressive driving when he or she operates any motor vehicle with the intent to annoy, harass, molest, intimidate, injure, or obstruct another person, including without limitation violating Code Section 40-6-42 [(Overtaking and passing)], 40-6-48 [(Driving on roadways laned for traffic)], 40-6-49 [(Following too closely)], 40-6-123 [(Turning movements; signals required on turning, changing lanes, slowing or stopping)], 40-6-184 [(Impeding traffic flow; minimum speed in left-hand lanes)], 40-6-312 [(Operating motorcycle on roadway laned for traffic)], or 40-6-390 [(Reckless driving)] with such intent.

[2] LSU vs. Georgia. Unhappily, the score was LSU 34 and Georgia 13.

The officer estimated that Frasard stayed on his horn for the time it took to travel the entire city block from Harris to Baker Streets; he estimated this was about 20-25 seconds. According to the officer, Frasard was very agitated, yelling at him, and was upset with the fact that the officer was driving slowly. When asked why he did not just go around the officer, Frasard replied, "you shouldn't be going that slow on a city street."

Frasard testified that, according to his parking slip, he left his parking deck at 11:27 p.m. and the officer testified he was stopped at 11:30. He testified that he waited for a car to pass, and then pulled out behind what later turned out to be the officer's car. He got behind the car and "because the driver was going too slow," "tooted" his horn. After Frasard tooted his horn, the officer slowed down even more. He further testified that when he tooted his horn again, the officer "slammed on his brakes to try to create an accident rather than avoid an accident." He could not pass the officer because traffic was in the lane closest to the curb. Frasard did not pass the officer on the right side because he did not believe it made sense "to get in the fast lane and come over and cut the officer off again" to make his left turn to go home.

He "honked [his] horn because the driver was going too slow which is, [he thought, his] right as a driver." He maintained that he "tooted his horn," which is different from "laying on the horn or honking on the horn." Frasard also attempted to show that his horn was no louder than the taxi bell used by one of the hotels in the area. According to him, this hotel has a very loud taxi bell and his horn was no louder than that bell.

Frasard asserts that the evidence was insufficient to sustain his conviction as he was "stuck" behind a car traveling five miles an hour on a street with a thirty mile per hour speed limit. Needing to make a left turn, he proceeded to honk his horn which he contends OCGA § 40-8-70 (a)[3] allows because he was unable to legally pass the car ahead of him. He contends his conduct was not irrational and thus does not violate the Code section.

On appeal we view the evidence in the light most favorable to the verdict, Frasard no longer enjoys the presumption of innocence, and we determine the sufficiency of the evidence, but neither weigh the

---

[3] Every motor vehicle when operated upon a highway shall be equipped with a horn in good working order and capable of emitting sound audible under normal conditions from a distance of not less than 200 feet, but no horn or other warning device shall emit an unreasonably loud or harsh sound or a whistle. The driver of a motor vehicle shall, when it is reasonably necessary to ensure safe operation, give audible warning with his or her horn but shall not otherwise use such horn when upon a highway.

evidence nor judge the credibility of the witnesses. *Grant v. State*, 195 Ga. App. 463, 464 (1) (393 SE2d 737) (1990). Further, resolving conflicts and inconsistencies in the evidence, determining the credibility of witnesses, and weighing the evidence are for the factfinder. *Hampton v. State*, 272 Ga. 284, 285 (1) (527 SE2d 872) (2000); *Turner v. State*, 206 Ga. App. 683, 684 (426 SE2d 168) (1992). Thus, after reviewing the evidence in the light most favorable to the jury's determination, we conclude that a rational trier of fact could have found Frasard guilty of violating OCGA § 40-6-397 (a) beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Frasard also contends that his conviction must be reversed because the record does not show that he voluntarily and intelligently waived his right to counsel. The right to counsel

> may be waived only by voluntary and knowing action. Waiver will not be lightly presumed, and a trial judge must indulge every reasonable presumption against waiver. It is clear, however, that should a defendant choose to represent himself, he must have an opportunity to voluntarily, knowingly, and intelligently waive his right to counsel. The standard for waiver requires an intentional relinquishment or abandonment of a known right or privilege, and the constitutional right of the accused to be represented by counsel invokes, of itself, the protection of a trial court, in which the accused — whose life or liberty is at stake — is without counsel. This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused. While an accused may waive the right to counsel, whether there is a proper waiver should be clearly determined by the trial court, and it would be fitting and appropriate for that determination to appear on the record.

(Citations and punctuation omitted.) *Hasty v. State*, 215 Ga. App. 155, 158 (2) (450 SE2d 278) (1994).

The State initially argued that the record on appeal would be supplemented with a transcript that would show that Frasard was advised by the trial court of the dangers and disadvantages of proceeding without counsel. The State has now filed a supplemental brief stating that this transcript is not available because the court reporter who took down the trial has moved from the State and may be dead.

Nevertheless, the State contends the affidavit for pleading not guilty that Frasard executed shows he was properly warned of his

right to counsel and of the dangers of proceeding without counsel. The determination of whether there has been an intelligent waiver of the right to counsel depends upon the particular facts and circumstances of each case, *Clarke v. Zant*, 247 Ga. 194, 196 (275 SE2d 49) (1981); *Reviere v. State*, 231 Ga. App. 329, 330-331 (1) (498 SE2d 332) (1998), and no magic language must be used by a trial judge in doing so. *Reviere v. State*, supra, 231 Ga. App. at 331.

The State has the burden of showing from the trial transcript or extrinsic evidence that the defendant understood "(1) the nature of the charges against him, (2) any statutory lesser included offenses, (3) the range of possible punishments for the charges, (4) possible defenses, (5) mitigating circumstances, and (6) any other facts necessary for a broad understanding of the matter." *McAdams v. State*, 258 Ga. App. 250, 251 (1) (573 SE2d 501) (2002). Pre-trial waiver forms, which are extrinsic evidence, should also outline pertinent dangers

> such as (1) the possibility of a jail sentence; (2) the rules of evidence will be enforced; (3) strategic decisions with regard to voir dire and the striking of jurors must be made by defendant; (4) strategic decisions as to the calling of witnesses and/or the right to testify must be made by defendant; and (5) issues must be properly preserved and transcribed in order to raise them on appeal. [Cit.]

*Dellinger v. State*, 269 Ga. App. 878, 878-879 (2) (a) (605 SE2d 632) (2004). Nevertheless, our Supreme Court of Georgia has emphasized that the trial court is not required to make each of these inquiries, as long as the record reflects the accused was made aware of the dangers of self-representation and made a knowing and intelligent waiver of his right to counsel. *Jones v. State*, 272 Ga. 884, 886 (2) (536 SE2d 511) (2000). The relevant parts of the form signed by Frasard state that he understood the nature of the charges against him and the maximum punishment, including the possibility of a jail sentence, understood he had the right to counsel, understood counsel would be appointed for him if he was indigent, and understood that if he elected to represent himself, he would be held to the same legal rules as a lawyer would be, understood that he might not understand the rules used in court and that defenses could exist that might be raised by a lawyer, understood he might not know how to properly secure and examine witnesses, understood there are legal and strategy issues in selecting jurors, and understood that he might not know how to preserve issues for appeal.

The form also recites that Frasard knew and understood the dangers of proceeding without a lawyer. In particular, Frasard stated that he "had been informed of the dangers of proceeding without a lawyer," and that he was "willing to proceed without a lawyer and [he understood] that [he was] waiving [his] right to have a lawyer represent [him]." Further, Frasard swore under penalty of perjury that those statements were true.

The form also states that the trial court "finds that the defendant knowingly and voluntarily waives . . . the right to counsel." Under these circumstances, we find that the record shows that Frasard voluntarily and knowingly waived his right to counsel.[4]

Consequently, given the information provided by the affidavit for pleading not guilty, we find that Frasard was made aware of the dangers of representing himself and made a knowing and intelligent waiver of his right to counsel. Therefore, this enumeration of error is without merit.

3. Because he alleged that it was his sole defense, Frasard contends the trial court erred by not charging on the defense of justification, see OCGA § 16-3-20, even though he did not request such a charge. See *Tarvestad v. State*, 261 Ga. 605, 606 (409 SE2d 513) (1991). The State contends, however, that circumstances of this case did not warrant a charge on justification and that Frasard failed to request such a charge in writing.

A trial court's failure to give a charge is not reversible error if the charge was not requested in writing, *Bullock v. State*, 202 Ga. App. 65, 66 (1) (413 SE2d 219) (1991), but the failure to charge on the defendant's sole defense, even without request, can constitute reversible error. *Wells v. State*, 200 Ga. App. 104, 105 (1) (407 SE2d 86) (1991) (physical precedent only). Consequently, we must consider whether the affirmative defense of justification was authorized and whether it was Frasard's sole defense.

Frasard relies upon "OCGA § 16-3-20 (6), the omnibus provision of Georgia's justification statute: 'The defense of justification can be claimed in all other instances which stand upon the same footing of reason and justice as those enumerated in OCGA § 16-3-20 et seq.' " (Citation and punctuation omitted.) *Gravitt v. State*, 279 Ga. 33, 34 (2) (608 SE2d 202) (2005). He contends the trial court erred by holding in the order denying his motion for new trial that the defense is limited to life-threatening emergencies.

The defense of justification is an affirmative defense. *McPetrie v. State*, 263 Ga. App. 85, 88 (2) (587 SE2d 233) (2003). "An affirmative

---

[4] Because of this ruling it is unnecessary for us to consider the State's contention that Frasard waived this issue by not asserting it in his motion for new trial.

defense is one in which the defendant admits the act but seeks to justify, excuse, or mitigate it. The defendant must admit the crime before he can raise the defense." (Footnotes omitted.) *Code v. State*, 255 Ga. App. 432, 434 (4) (565 SE2d 477) (2002). Frasard, however, did not admit or testify that he drove aggressively. Frasard never acknowledged, in any fashion, that he was driving in the manner the State alleged, and then argued or presented evidence that he was required to do so for some valid reason.

Further, in addition to the evidence discussed above, Frasard's opening statement said that "the defense will show you that all the defendant did was honk his horn behind an unmarked police car and will also show you that by the end of the trial that the State could not prove the intent part of the aggressive driving." In his closing Frasard repeatedly argued that the State did not prove that he had the intent to violate OCGA § 40-6-397. According to Frasard, the State merely proved that he was following too closely and that he was honking his horn in response to the officer's slow driving. He argued that it was reasonable for him to honk his horn under those circumstances and further argued that State law allows one to honk his horn when it is reasonable and necessary for the safe operation of his vehicle. He never admitted that he had pulled up very close to the police car and was aggressively moving from side to side in his lane.

As Frasard's trial tactics clearly show that he did not admit that he was driving aggressively, he was not entitled to assert the affirmative defense of justification. *Code v. State*, supra, 255 Ga. App. at 434. Accordingly, the trial court did not err by failing to charge on justification.[5]

Therefore, Frasard's conviction is affirmed.

*Judgment affirmed. Johnson, P. J., concurs. Ruffin, C. J., concurs in judgment only.*

DECIDED MARCH 22, 2006 — 

*Kimbrell & Burgar, Marko L. Burgar*, for appellant.

*Joseph J. Drolet, Solicitor-General, Barbara M. Collins, Raines F. Carter, Assistant Solicitors-General*, for appellee.

---

[5] Pretermitting whether the trial court erred by finding that the defense of justification is limited to emergencies, "[a] correct decision of a trial court will not be reversed, regardless of the reasons given therefor." (Citations and punctuation omitted.) *Ely v. State*, 192 Ga. App. 203, 205 (4) (384 SE2d 268) (1989).