A07A0034. GREGOIRE v. THE STATE.

(645 SE2d 611)

JOHNSON, Presiding Judge.

Following a bench trial, the court found Peter Gregoire guilty of driving under the influence of alcohol to the extent he was a less safe driver and guilty of making an improper lane change. Gregoire appeals, alleging there was insufficient probable cause that he was impaired by alcohol to make a custodial arrest for driving under the influence and the evidence was insufficient to support his conviction for driving under the influence of alcohol. We find no error and affirm Gregoire's convictions.

On appeal from a criminal conviction, we view the evidence in the light most favorable to support the jury's verdict, and the defendant no longer enjoys a presumption of innocence; moreover, this Court determines evidence sufficiency and does not weigh the evidence or determine witness credibility.[1] Resolving evidentiary conflicts and inconsistencies is a matter of credibility for the finder of fact, not this Court.[2] As long as there is some evidence, even though contradicted, to support each necessary element of the state's case, this Court will uphold the jury's verdict.[3]

Viewed in that light, the evidence shows that an officer with the Fulton County Police Department observed a vehicle being driven erratically around 2:15 a.m. The vehicle, traveling faster than 94

[1] *Cockrell v. State*, 248 Ga. App. 359 (1) (545 SE2d 600) (2001).

[2] *Boyd v. State*, 259 Ga. App. 864, 866 (3) (578 SE2d 472) (2003).

[3] *Alewine v. State*, 273 Ga. App. 629 (1) (616 SE2d 472) (2005).

miles per hour, swerved in and out of its lane of travel at least five times. In addition, the vehicle made a number of lane changes over the gore area of the highway. According to the officer,

> as we're going 400 South, he was in the far-right lane that led to 285 westbound. And as he almost got on 285 westbound, or the ramp to it, he swerved across the — to the left across the gore, into what then became the right-most lane which led to 285 eastbound. And I — just before he got on, all the way on the ramp, he swerved across the gore area again, where [the] 285 westbound ramp is.

The officer initiated a traffic stop and noted that Gregoire, the vehicle's driver, had "bloodshot, sleepy-looking eyes," slow and unco-ordinated movements, and a strong odor of alcohol on his breath. The officer also noticed that Gregoire slurred his words when responding to questioning. The officer requested that Gregoire undertake some field sobriety evaluations, which Gregoire agreed to do.

Prior to the administration of the field sobriety evaluations, the officer observed that Gregoire was unsteady on his feet. During the horizontal gaze nystagmus test, the officer noted a lack of smooth pursuit in each eye, distinct nystagmus at maximum deviation in both eyes, and the onset of nystagmus prior to a 45 degree angle in both eyes. Gregoire also exhibited six out of the possible eight clues in the walk-and-turn evaluation, and failed the one-leg-stand evalua-tion. Based on his observations of Gregoire's erratic driving, Gre-goire's performance on the field sobriety evaluations, and the officer's experience in seeing people in various stages of intoxication, the officer determined that Gregoire had been driving while under the influence of alcohol to the extent he was a less safe driver. He placed Gregoire under arrest, then read Gregoire the Georgia implied con-sent warning and requested that Gregoire take a breath test. Gre-goire refused the breath test.

At that point, Gregoire complained of chest pain and was trans-ferred to the hospital for observation. After an examination, Gregoire was neither admitted to the hospital nor prescribed any medication. In fact, the officer testified that he saw Gregoire jogging in place at the hospital.

An inventory search of Gregoire's vehicle revealed several un-opened beer bottles on ice and two empty beer bottles that would have been within easy reach of Gregoire while he was driving. At trial Gregoire admitted he had consumed "a couple" of beers the night of the incident.

1. Gregoire contends there was insufficient probable cause to arrest him for driving under the influence of alcohol. We disagree.

The facts necessary to establish probable cause for arrest are much less than those required to prove guilt beyond a reasonable doubt at trial; the test merely requires a probability — less than a certainty but more than a mere suspicion or possibility.[4] Under the circumstances presented here, sufficient probable cause to conduct a DUI arrest only requires that an officer have knowledge that a suspect was actually in physical control of a moving vehicle while under the influence of alcohol to a degree which renders him incapable of driving safely.[5]

Even without the failed field sobriety tests which Gregoire challenges, the experienced officer's undisputed testimony that Gregoire traveled at a high rate of speed, swerved in and out of his lane of travel at least five times, switched lanes by crossing over the gore area of the highway several times, had bloodshot eyes and slow, uncoordinated movements, smelled of alcohol, slurred his words, and was unsteady on his feet sufficed to create probable cause for his arrest for driving under the influence of alcohol.[6]

2. Gregoire contends the evidence was insufficient to support his conviction for driving under the influence of alcohol to the extent he was a less safe driver. We again find no merit to this argument.

Gregoire argues that a number of factors, including the officer's alleged failure to demonstrate the field sobriety tests and fully comply with test guidelines, and the fact that Gregoire injured his ankle earlier in the day, contributed to his failed field sobriety evaluations. These arguments go to the weight and not to the admissibility of the field sobriety evaluations.[7] In addition, we find the evidence sufficient to support Gregoire's conviction for driving while under the influence of alcohol to the extent he was a less safe driver even without the failed field sobriety evaluations.

The state may show proof of impairment under OCGA § 40-6-391 (a) by introducing evidence of (1) erratic driving behavior, (2) failure to pass field sobriety tests, and (3) the officer's own observations, such as smelling alcohol and observing strange behavior, and resulting opinion that the alcohol made it less safe for the defendant to drive.[8] Here, ample evidence supports the trial judge's conclusion that Gregoire was driving under the influence, including the officer's testimony regarding Gregoire's erratic driving behavior and his characteristics and demeanor after the stop. This evidence, coupled

---

[4] See *Lewis v. State*, 276 Ga. App. 248, 249 (622 SE2d 912) (2005).

[5] See *Faulkner v. State*, 277 Ga. App. 702, 705 (2) (627 SE2d 423) (2006).

[6] See *Lewis*, supra.

[7] See generally *Keller v. State*, 271 Ga. App. 79, 80-81 (2) (608 SE2d 697) (2004).

[8] See *Hendrix v. State*, 273 Ga. App. 792, 796 (3) (a) (616 SE2d 127) (2005); *Weldon v. State*, 262 Ga. App. 854, 855 (3) (586 SE2d 741) (2003).

with the officer's testimony that, based upon his observations, police training and experience, Gregoire was a less safe driver as a result of being under the influence of alcohol, was sufficient to allow a rational trier of fact to conclude that Gregoire was guilty beyond a reasonable doubt of driving while under the influence of alcohol.[9]

*Judgment affirmed. Phipps and Mikell, JJ., concur.*

DECIDED APRIL 16, 2007.

*Head, Thomas, Webb & Willis, William C. Head*, for appellant.
*Carmen D. Smith, Solicitor-General*, for appellee.

---

[9] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Boyd*, supra.