## S09A2064. DEVEGA v. THE STATE.
### (689 SE2d 293)

CARLEY, Presiding Justice.

A jury found Robert Bella Devega, III guilty of malice murder, two counts of felony murder, two counts of aggravated assault, possession of a firearm during the commission of a felony, and conspiracy to sell a controlled substance. The trial court entered judgments of conviction and sentenced Devega to life imprisonment for malice murder, and to consecutive prison sentences of ten years for the drug offense and five years for the weapons charge. The felony murder verdicts were vacated by operation of law, and the aggravated assault verdicts were merged into the malice murder conviction. See *Malcolm v. State*, 263 Ga. 369, 372 (4), (5) (434 SE2d 479) (1993). Devega appeals after the denial of a motion for new trial.[*]

1. Construed most strongly in support of the verdicts, the evidence shows that Devega agreed to sell a quarter kilogram of cocaine to Saifullah Afzal for $5,000. When they met to complete the drug deal, Devega killed Afzal by intentionally shooting him nine times with two handguns. The evidence was sufficient for a rational trier of fact to find Devega guilty beyond a reasonable doubt of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Devega claims that his Fourth Amendment right against unreasonable searches and seizures was violated when the police requested, without a warrant, that his cellular telephone provider "ping" his phone in order to locate him. Because this issue was not raised at trial, Devega "has waived review of [it] on appeal. [Cit.]" *Judkins v. State*, 282 Ga. 580, 582 (2) (652 SE2d 537) (2007).

---

[*] The crimes occurred on March 16, 2007, and the grand jury returned the indictment on January 4, 2008. The jury found Devega guilty on April 25, 2008, and the trial court entered judgment on May 29, 2008. Devega filed a motion for new trial on May 30, 2008. An amended motion for new trial was filed on December 16, 2008, and was denied on February 25, 2009. The notice of appeal was filed on March 23, 2009. The case was docketed in this Court on August 26, 2009, and oral argument was held on November 9, 2009.

3. Devega contends that the trial court erred in ruling that hearsay testimony from State witness Kiona Fisher, concerning statements made by the victim about his drug deal with Devega, was admissible under the necessity exception.

> In order for hearsay to be admitted under the necessity exception, two requirements must be satisfied: "necessity" and "particularized guarantees of trustworthiness." [Cits.] "Necessity" is demonstrated when the declarant is deceased, when the statement is shown to be relevant to a material fact, and when the statement is more probative of the material fact than other evidence that may be produced and offered. [Cit.] The requirement of "particularized guarantees of trustworthiness" is satisfied when the declaration is coupled with "circumstances which attribute verity to (the declaration)." [Cit.] The determination of trustworthiness is "inescapably subjective" and the trial court's determination of the issue will not be disturbed absent an abuse of discretion. [Cit.]

*Watson v. State*, 278 Ga. 763, 765 (2) (a) (604 SE2d 804) (2004). The necessity requirement is clearly satisfied in this case. The victim is deceased, his statements were relevant to the material facts of the arranged drug transaction and his meeting with Devega immediately before his death, and the admitted declarations "were more probative of these facts than evidence that could otherwise be produced and offered. [Cit.]" *Watson v. State*, supra.

As for the particularized guarantees of trustworthiness, Ms. Fisher testified that the victim was her boyfriend, that they had a close relationship, that they told each other things, and that she trusted him. "[T]his Court has consistently held that hearsay testimony by close, personal friends of the unavailable declarant is admissible under the necessity exception. [Cits.]" *Watson v. State*, supra. Moreover, " '[t]here is nothing to show that the victim had any reason to lie to [Ms. Fisher], who was subject to cross-examination. (Cit.)' [Cit.]" *Demons v. State*, 277 Ga. 724, 727 (4) (595 SE2d 76) (2004). Under the circumstances, "we find no error in the decision to admit the hearsay testimony under the necessity exception." *Campos v. State*, 273 Ga. 119, 121 (2) (538 SE2d 447) (2000).

Devega's additional argument that Ms. Fisher's testimony should not have been admitted because it contained double hearsay was not raised in the trial court. "By not raising the double-hearsay objection at the time the testimony was introduced, [Devega] waived that objection." *Reaves v. State*, 242 Ga. 542, 551 (6) (250 SE2d 376) (1978).

4. Devega claims that his trial counsel was ineffective. In order to prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984), Devega " 'must prove both that his trial counsel's performance was deficient and that there is a reasonable probability that the trial result would have been different if not for the deficient performance. (Cit.)' [Cit.]" *Hill v. State*, 284 Ga. 521, 522 (2) (668 SE2d 673) (2008). " 'On appeal, this Court accepts the trial court's findings of fact, unless they are clearly erroneous. However, the trial court's legal conclusions are reviewed de novo. (Cit.)' [Cit.]" *King v. State*, 282 Ga. 505, 506 (2) (651 SE2d 711) (2007). The specific claims of ineffective assistance are as follows.

(a) Devega contends that his attorney was ineffective in failing to investigate psychiatric records showing that he suffered from post-traumatic stress disorder. However, even if we assume that counsel was deficient, Devega has failed to show that this deficiency prejudiced his defense. " '[I]t is not enough to show merely that counsel unreasonably failed to inquire into his mental state — he must show a [reasonable probability] that such an evaluation would have affected the outcome at trial.' [Cit.]" *Haygood v. State*, 289 Ga. App. 187, 193 (2) (a) (656 SE2d 541) (2008). At the motion for new trial hearing, Devega introduced copies of his psychiatric records. However, those documents were not tendered or admitted for the truth of the matters asserted therein or as proof of Devega's alleged disorder. Rather, they were admitted solely for the limited purpose of showing that Devega's stepmother tried to give the papers to trial counsel. Consequently, "the record does not contain any medical records, expert testimony, or other evidence of his diagnosis or treatment. [Cit.]" *Jennings v. State*, 282 Ga. 679, 680 (2) (653 SE2d 17) (2007). Absent such evidence, Devega has failed to show a reasonable probability "that further investigation would have established a valid psychiatric defense. Speculation is insufficient to satisfy the prejudice prong of *Strickland*, supra. [Cits.]" *Cormier v. State*, 277 Ga. 607, 609 (2) (a) (592 SE2d 841) (2004). See also *Haygood v. State*, supra (prejudice not shown in absence of expert testimony as to defendant's mental state). Compare *Martin v. Barrett*, 279 Ga. 593, 595-596 (619 SE2d 656) (2005) (expert testimony supported habeas court finding of reasonable probability that defendant might have been found incompetent to stand trial, legally insane or guilty but mentally ill if counsel had adequately investigated his mental illness).

(b) Devega contends that his trial lawyer deficiently failed to challenge the legality of his warrantless arrest by City of Smyrna police officers on Dobbins Air Reserve Base, which is located in

unincorporated Cobb County.

> "A 'warrantless arrest' is constitutionally valid if at the time of the arrest the arresting officer has probable cause to believe the accused has committed or is committing an offense. (Cits.) Probable cause exists if the arresting officer has knowledge and reasonably trustworthy information about facts and circumstances sufficient for a prudent person to believe the accused has committed an offense. (Cit.)" [Cit.]

*Brown v. State*, 262 Ga. 728, 729 (2) (a) (425 SE2d 856) (1993). Devega asserts that the arresting officers did not have probable cause to suspect him of murder when they arrested him without a warrant on the morning after the homicide. However, even if we assume that is true, the officers clearly had probable cause to suspect him of conspiring to commit an illegal drug transaction. Shortly after the murder, investigators obtained reasonably trustworthy information from two independent witnesses which established that Devega had arranged to meet the victim at the site of the murder and sell cocaine to him. One of the witnesses knew Devega well and was present when he first met the victim to set up the drug deal, and the other witness was Ms. Fisher, who actually drove the victim to the site. "Because the police had probable cause to suspect that [Devega] had [conspired to sell cocaine], they lawfully arrested him without a warrant." *State v. Bryant*, 284 Ga. App. 867, 870 (644 SE2d 871) (2007).

As for the claim that the arrest was unlawful because the Smyrna police were outside their jurisdiction in unincorporated Cobb County, we need not resolve that issue. "Where probable cause exists, even an illegal, warrantless arrest in a suspect's home does not render inadmissible subsequent statements made outside the premises. [Cits.]" *Pittman v. State*, 277 Ga. 475, 479 (4) (592 SE2d 72) (2004). Thus, even if we assume that the warrantless arrest in this case was illegal because the officers were outside their jurisdiction, suppression of the fruits of that arrest is not required because the arrest was made with sufficient probable cause and in an office, rather than in the sanctity of the home. See *State v. Giangregorio*, 181 Ga. App. 324, 325 (352 SE2d 193) (1986) (upholding arrest and subsequent search of defendant at airport in Clayton County by DeKalb County officer who was working on multi-agency drug task force, but had not been sworn as a Clayton County deputy). It follows that trial counsel was not ineffective in failing to raise a challenge to the validity of the arrest that would not have resulted in the suppression of any evidence.

With regard to the arrest occurring on Dobbins Air Reserve Base, Devega cites OCGA § 50-2-23, under which

> the state retains criminal jurisdiction over persons for state offenses committed on property that has been acquired by the United States, except for property used by the Department of Defense and by the Department of Justice. Even where the latter type of federal property is involved, the state retains jurisdiction unless the criminal defendant shows that the United States has accepted such jurisdiction by its filing a notice with the governor of the state in which the land is situated. [Cit.]

*Jackson v. State*, 183 Ga. App. 594, 595 (359 SE2d 457) (1987). Devega claims that he made the required showing by introducing, at the motion for new trial hearing, a copy of a letter from 1943 in which the Secretary of War notified the Governor of Georgia that the United States accepted exclusive jurisdiction over land acquired by it for military purposes. In support of this claim, Devega emphasizes the portion of OCGA § 50-2-23 which exempts "territory owned by the United States and used by the Department of Defense" from the State's retained criminal jurisdiction over ceded federal property. However, we note that this emphasized portion was added to the statute in 1952, after the 1943 letter upon which he relies. Moreover, the State introduced evidence which refuted Devega's claim, including a 1946 opinion from the Office of the Judge Advocate General, stating that the letter in question did not confer exclusive jurisdiction upon the United States and that the State of Georgia retained criminal jurisdiction over lands in the state used for federal military purposes. The State also introduced a Department of the Army jurisdiction statement specifically for Dobbins, which provides that the United States does not have exclusive jurisdiction over the property. Indeed, as recognized by the trial court in its order denying the motion for new trial, it has previously been held that the United States has not accepted "exclusive criminal jurisdiction over the land known as Dobbins Air Force Base in Cobb County . . . ." *Dobbins v. State*, 114 Ga. App. 403 (151 SE2d 549) (1966). Accordingly, the trial court did not err in concluding that the arrest on the base was lawful. Since the trial court's ruling was not erroneous, trial counsel's failure to raise a meritless challenge to the arrest does not constitute deficient performance. See *Martin v. State*, 281 Ga. 778, 781 (3) (a) (642 SE2d 837) (2007).

(c) Because the arrest discussed above was not unlawful, Devega's claim that the seizure of his car from the base was the fruit of an illegal arrest is without merit. Furthermore, given the trial court's

finding, based on police testimony, that the vehicle was not secure where it was located at the base, "the trial court did not err in concluding it was reasonable for the police to impound the car in order to prevent tampering. [Cit.]" *Teal v. State*, 282 Ga. 319, 328 (4) (647 SE2d 15) (2007). Trial counsel therefore was not ineffective in failing to make a meritless motion with regard to the impoundment of the vehicle.

(d) Devega alleges that his trial attorney should have challenged the warrantless "ping" of his cell phone as a violation of his Fourth Amendment right against unreasonable searches and seizures. After discovering that Devega had arranged to meet with and sell cocaine to the victim immediately prior to his death, the investigators requested that Devega's cell phone provider "ping" his phone, which the officers described as sending a signal to the phone to locate it by its global positioning system (GPS). The company complied and informed the police that the phone was moving north on Cobb Parkway. Police followed the signal along the parkway and onto Dobbins Air Reserve Base.

Devega cites *United States v. Karo*, 468 U. S. 705 (104 SC 3296, 82 LE2d 530) (1984), to support his claim of a constitutional violation. However, *Karo* is significantly different from this case. In that case, the Supreme Court held that "the monitoring of a beeper in a private residence, a location not open to visual surveillance, violates the Fourth Amendment rights of those who have a justifiable interest in the privacy of the residence." *United States v. Karo*, supra at 714 (III). Here, the police did not monitor Devega's cell phone while it was in a private residence. Rather, it was monitored while it was in a car on a public roadway, a location open to visual surveillance.

In a similar case, the Supreme Court found that

" '[a] car has little capacity for escaping public scrutiny. It travels public thoroughfares where both its occupants and its contents are in plain view.' [Cit.]" [Cits.] A person traveling in an automobile on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another.

*United States v. Knotts*, 460 U. S. 276, 281 (II) (103 SC 1081, 75 LE2d 55) (1983). Due to the absence of any expectation of privacy, the Supreme Court held that the warrantless monitoring of signals from a beeper inside an automobile traveling on public roads did not violate the Fourth Amendment because it did not reveal any information that was not also available through visual surveillance. *United States v. Knotts*, supra at 285 (II).

"The GPS tracking device [and 'ping' information] in the case at bar is simply the next generation of tracking science and technology from the radio transmitter 'beeper' in *Knotts*, to which the *Knotts* Fourth Amendment analysis directly applies." *Stone v. State*, 941 A2d 1238, 1250 (Md. App. 2008). Thus, in this case, Devega had no reasonable expectation of privacy while traveling in his car on Cobb Parkway and onto the base.

When [he] traveled over the public streets he voluntarily conveyed to anyone who wanted to look the fact that he was traveling over particular roads in a particular direction, the fact of whatever stops he made, and the fact of his final destination when he exited from public roads onto [the base].

*United States v. Knotts*, supra at 281-282. Because the warrantless monitoring of his cell phone location revealed the same information as visual surveillance, there was no Fourth Amendment violation. See *Stone v. State*, supra at 1251 (cell phone "ping" information used to locate suspect in public did not violate Fourth Amendment).

(e) Devega claims that his attorney was ineffective in failing to request a hearing to challenge the admissibility of his custodial statement on the ground that it was obtained in violation of his right to counsel. However, this claim is directly contradicted by the trial transcript, which reveals that such a challenge was raised and a hearing was held. Moreover, testimony shows that after Devega asked for an attorney, the police immediately stopped questioning him. He subsequently asked to speak to the officers again, signed a form waiving his rights, including the right to counsel, and acknowledging that he was giving the statement freely and voluntarily. "A suspect who asks for a lawyer at any time during a custodial interrogation may not be subjected to further questioning by law enforcement until an attorney has been made available or until the suspect reinitiates the conversation. [Cit.]" *Taylor v. State*, 274 Ga. 269, 271-272 (1) (553 SE2d 598) (2001). Since Devega reinitiated the conversation, further questioning by the officers did not violate his right to counsel.

Inasmuch as the trial court's determinations regarding the admissibility of appellant's statements are supported by the testimony of the investigating officer, the trial court's findings are not clearly erroneous and will not be disturbed on appeal. [Cit.]

*Prince v. State*, 277 Ga. 230, 232 (2) (587 SE2d 637) (2003). Because

counsel sought to suppress the statement and the trial court did not err in admitting it, Devega has failed to show ineffective assistance.

(f) Devega argues that trial counsel improperly failed to challenge the validity of an arrest warrant, obtained after he was released following his initial warrantless arrest, and two search warrants, on the ground that they were issued based on affidavits that contained misinformation. Specifically, Devega claims that the affidavits falsely stated that Ms. Fisher saw a green truck matching the description of Devega's Ford SUV speeding away from the scene of the shooting and that the last call received by the victim's phone was from a phone known to belong to Devega. Contrary to Devega's claim, the statement regarding the truck was not false. Ms. Fisher specifically testified at the motion for new trial hearing that she told a detective at the murder scene that she had seen a "dark colored SUV speeding from that location after the gunshots that were fired [there]."

As for counsel's alleged failure to challenge the statement concerning the phone, that claim is simply unfounded. The attorney filed a motion to suppress based precisely on that issue. At the hearing on that motion, a detective testified that prior to obtaining the search warrants, the police had been informed by the cell phone company that the phone in question belonged to Devega. It was only later that they learned that the phone actually belonged to Devega's father, who has the same name as him. Nevertheless, even though the information regarding ownership of the phone may have been faulty, other evidence presented at trial showed that the phone was in fact possessed, and used, by Devega. Thus, the

> slight discrepancy [in] the affidavits . . . does not suggest an intentional or reckless falsehood on the part of the affiant. Besides, the allegedly false statement was not necessary to a finding of probable cause. See *Franks v. Delaware*, 438 U. S. 154 (98 SC 2674, 57 LE2d 667) (1978); *Williams v. State*, 251 Ga. 749, 796 (312 SE2d 40) (1983).

*Stanford v. State*, 272 Ga. 267, 271 (10) (528 SE2d 246) (2000). Accordingly, Devega has failed to show ineffective assistance of counsel.

(g) Devega correctly notes that in the order denying the motion for new trial, the trial court's recitation of the standard used to evaluate the prejudice prong of an ineffectiveness claim is incomplete in that it does not include the required "reasonable probability" language. See *Miller v. State*, 285 Ga. 285, 287 (676 SE2d 173) (2009). However, we have applied the correct standard in conducting our de novo review of the trial court's legal conclusions and have

determined that Devega's ineffectiveness claims are without merit. Accordingly, the error in the trial court's order does not mandate a reversal.

*Judgment affirmed. All the Justices concur.*

DECIDED FEBRUARY 1, 2010.

*Larry D. Wolfe, Robert A. Susor,* for appellant.

*Patrick H. Head,* District Attorney, *Jesse D. Evans, Dana J. Norman, John R. Edwards,* Assistant District Attorneys, *Thurbert E. Baker,* Attorney General, *Mary K. Ware,* Assistant Attorney General, for appellee.