**FOURTH DIVISION**
**DOYLE, P. J.,**
**MCFADDEN and BOGGS, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**May 13, 2013**

# In the Court of Appeals of Georgia

A13A0083. SIMMONS v. THE STATE.                    DO-003 C

DOYLE, Presiding Judge.

Following a bench trial, Robert Lee Simmons was convicted of driving under the influence to the extent it was less safe for him to drive ("DUI less safe"),[1] failure to report an accident resulting in injury or property damage of $500 or more,[2] aggressive driving,[3] possessing an open container of an alcoholic beverage in the passenger area of a vehicle,[4] and operating a motor vehicle without registration or a

---

[1] OCGA § 40-6-391 (a) (1).

[2] OCGA § 40-6-273.

[3] OCGA § 40-6-397 (a).

[4] OCGA § 40-6-253 (b) (1).

valid license plate.[5] Simmons appeals, arguing that he did not intelligently waive his right to a jury trial. He also contends that the trial court erred by admitting a particular witness statement, and he challenges the sufficiency of the evidence with regard to his convictions for DUI less safe, aggressive driving, and possessing an open container. We affirm, for the reasons that follow.

"'On appeal from a criminal conviction that follows a bench trial, the defendant no longer enjoys a presumption of innocence, and we view the evidence in a light favorable to the trial court's finding of guilt.'"[6] So viewed, the evidence shows that on January 11, 2011, at approximately 9:30 p.m., Bradley Faircloth was traveling on I-20 in Cobb County. The roads were icy and slushy, with only one traveling lane open; cars were lined up in the emergency lane to exit the highway. Faircloth was in the stop and go line of traffic in the emergency lane when his vehicle was struck from behind by a tow truck four times, in rapid succession, with such force that the towing hitch on the back of Faircloth's truck broke. Faircloth approached the truck that hit him to exchange information with the driver, Simmons, who was sitting in the

---

[5] OCGA § 40-2-8.

[6] (Punctuation omitted.) *Hinton v. State*, 319 Ga. App. 673 (738 SE2d 120) (2013).

driver's seat. Simmons had slurred speech, and when he opened the door of his truck, Faircloth noticed that "it reeked of alcohol." Simmons said that "somebody must have put something in [his] drink," and then repeatedly stated that he needed to leave. While Faircloth called 911, Simmons closed the door and drove off quickly, sideswiping Faircloth's truck and almost striking him.

Officer Brian Scurr responded to the scene and spoke to Faircloth, who was complaining of back pain and had "significant damage to the rear of [his] vehicle." Faircloth indicated that the tow truck had the word "Simmons" on the side. Officer Scurr then received notice from dispatch that there had been another accident nearby.

When Officer Scurr arrived at the scene of the second accident approximately 20 minutes later, he observed Simmons's tow truck and a 24-ounce "can of Crunk juice malt liquor laying just outside of the driver's cabin of the tow truck on the road in the snow." Officer Scurr asked Simmons to exit the vehicle, which did not have a license plate, and Simmons stepped out, lost his balance, and almost fell into the road. Simmons had bloodshot, glassy eyes and a strong odor of alcohol emanating from his breath, and he could not walk without assistance. Officer Scurr elected not to conduct field sobriety tests on Simmons because he was concerned that Simmons's lack of balance and the proximity to a major road posed a safety hazard. Based on his

experience, training, and observations of Simmons, Officer Scurr placed Simmons under arrest for DUI less safe.

Following a bench trial, Simmons was found guilty of DUI less safe, failure to report an accident resulting in injury or property damage of $500 or more, aggressive driving, possessing an open container of an alcoholic beverage in the passenger area of a vehicle, and operating a motor vehicle without registration or a valid license plate.[7] This appeal followed.

1. Simmons contends that he did not intelligently waive his constitutional right to a jury trial because the trial court did not advise him of the specific consequences that the waiver would have with regard to the trial court's factual findings. This argument is without merit.

> A defendant's right to trial by jury is one of those fundamental constitutional rights that the defendant must personally, knowingly, voluntarily, and intelligently choose to waive. A trial court should ask the defendant sufficient questions on the record so that the court can ensure the defendant's waiver is knowing, voluntary, and intelligent.[8]

---

[7] Simmons was also charged with striking an unattended vehicle and aggressive driving with regard to the second accident (not involving Faircloth), but the State withdrew those charges at trial.

[8] (Punctuation and footnote omitted.) *Watson v. State*, 274 Ga. 689, 691 (2) (558 SE2d 704) (2002), citing *Boykin v. Alabama*, 395 U. S. 238, 243, n. 5, (89 SCt

4

"The waiver, however, need not follow any particular form. The only real issue is whether the defendant intelligently agreed to a trial without jury."[9]

> When a defendant questions the validity of such a waiver, the State bears the burden of showing the waiver was made both intelligently and knowingly, either (1) by showing on the record that the defendant was cognizant of the right being waived; or (2) by filling a silent or incomplete record through the use of extrinsic evidence which affirmatively shows that the waiver was knowingly and voluntarily made.[10]

"We will affirm a trial court's determination that a defendant validly waived the right to a jury trial unless that determination is clearly erroneous."[11]

Here, immediately before the trial began, the trial court asked Simmons if he understood that he had a right to a jury trial and asked whether Simmons was "voluntarily and knowingly waiving" his right to a trial by jury, and Simmons responded affirmatively to both questions. "Only after receiving [Simmons's] oral

---

1709, 23 LE2d 274) (1969).

[9] (Citation and punctuation omitted.) *Edwards v. State*, 285 Ga. App. 227, 229 (2) (645 SE2d 699) (2007).

[10] (Punctuation omitted.) *Allison v. State*, 288 Ga. App. 482, 485-486 (2) (654 SE2d 628) (2007).

[11] *Edwards*, 285 Ga. App. at 229 (2).

5

assurance that he wished to waive trial by jury and proceed to trial before the court did the trial court accept [Simmons's] waiver."[12] Under these circumstances, the record shows that Simmons knowingly and intelligently waived his constitutional right to a trial by jury.[13]

2. Simmons argues that the trial court erred by admitting Faircloth's testimony regarding Simmons's statement that someone had put something into his drink because the State failed to provide the statement to the defense before trial.[14] This argument is unavailing.

OCGA § 17-16-7 provides, in relevant part, that

> [n]o later than ten days prior to trial or at such time as the court permits, . . . the prosecution . . . shall produce for the opposing party any statement of any witness that is in the possession, custody, or control of the state or prosecution . . . that relates to the subject matter concerning the testimony of the witness that [it] intends to call as a witness at trial.

"*The statutory obligation of OCGA § 17-16-7 is not triggered when a witness merely makes an oral statement.* There can be no 'possession, custody, or control' of a

---

[12] *Watson*, 274 Ga. at 691 (2).

[13] See id; *Ray v. State*, 292 Ga. App. 575, 577 (2) (665 SE2d 345) (2008).

[14] Simmons objected to the admission of the statement during trial.

witness' statement which has neither been recorded nor committed to writing."[15] Moreover, even assuming that admission of the statement was erroneous, it was harmless in light of the other evidence in the case, including witnesses' observations of Simmons' slurred speech, bloodshot eyes, lack of balance, odor of alcohol, and repeated collisions with Faircloth's truck.[16]

3. Next, Simmons contends that the evidence was insufficient to support his conviction for DUI less safe "based exclusively on the insufficient and inadmissible testimony of witness . . . Faircloth."

Simmons does not indicate why Faircloth's testimony was inadmissible. Assuming that he is referring to Faircloth's testimony regarding Simmons's statement to him, we resolved that issue against him in Division 2. Further, Faircloth's testimony was not the only evidence of DUI less safe. In addition to Faircloth's testimony that Simmons hit his truck four times, had slurred speech, smelled of alcohol, and sideswiped Faircloth's truck as he fled the scene, Officer Scurr testified that Simmons smelled of alcohol, could not maintain his balance, and had bloodshot,

---

[15] (Punctuation omitted; emphasis supplied.) *Winfrey v. State*, 286 Ga. App. 718, 721 (3) (650 SE2d 262) (2007), quoting *Forehand v. State*, 267 Ga. 254, 255-256 (3) (477 SE2d 560) (1996). See also OCGA § 17-16-1.

[16] See *Winfrey*, 286 Ga. App. at 722 (4).

glassy eyes. This evidence is sufficient to support Simmons's conviction for DUI less safe.[17]

4. Simmons also challenges the sufficiency of the evidence with regard to his conviction for aggressive driving, pointing out that Faircloth conceded on cross-examination that he "[could not] say" if the rear-end collisions were caused by the icy conditions. This argument is without merit. After reviewing the evidence – that Simmons struck Faircloth's truck *four* times in rapid succession, and then struck it again as he fled the scene – in the light most favorable to the verdict, "we conclude that a rational trier of fact could have found [Simmons] guilty of violating OCGA § 40-6-397(a) beyond a reasonable doubt."[18]

5. Finally, Simmons challenges the sufficiency of the evidence with regard to his conviction for possessing an open container, arguing that Officer Scurr's

---

[17] See *Gregoire v. State*, 285 Ga. App. 111, 113-114 (2) (645 SE2d 611) (2007) (erratic driving behavior, odor of alcohol, bloodshot eyes, and slurred speech sufficient to support conviction for DUI less safe); *Shockley v. State*, 256 Ga. App. 892, 893-894 (1) (570 SE2d 67) (2002).

[18] *Frasard v. State*, 278 Ga. App. 352, 354 (1) (629 SE2d 53) (2006) (physical precedent only). See also *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979); OCGA § 40-6-397 (a) ("A person commits the offense of aggressive driving when he or she operates any motor vehicle with the intent to annoy, harass, molest, intimidate, injure, or obstruct another person. . . .").

8

testimony that he observed the open container of malt liquor sitting in the snow directly outside the driver's door of Simmons's vehicle was insufficient because "the malt beverage can in the street could have belonged to anyone." We disagree.

"A person violates OCGA § 40-6-253 (b) by either consuming an alcoholic beverage or by possessing an open alcoholic-beverage container in the passenger area of a vehicle on a roadway or shoulder of a public highway."[19] When reviewing the sufficiency of the evidence,

> we do not determine the credibility of witnesses or weigh evidence; this is within the province of the jury. Our sole consideration on appeal is whether a rational trier of fact could have found [Simmons] guilty of violating Georgia's open-container law beyond a reasonable doubt. And because there is some competent evidence . . . to support a finding that [Simmons] committed the charged offense, we will not overturn the [conviction]."[20]

*Judgment affirmed. McFadden and Boggs, JJ., concur.*

---

[19] *Davenport v. State*, 308 Ga. App. 140, 151 (1) (d) (706 SE2d 757) (2011).

[20] (Punctuation and footnote omitted.) Id. at 152 (1) (d).

9