**THIRD DIVISION**
**BARNES, P. J.,**
**BOGGS and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**March 30, 2015**

# In the Court of Appeals of Georgia

A14A1849. GREEN v. THE STATE.

BOGGS, Judge.

Following a bench trial, Fred Green was found guilty of burglary. He appeals, asserting that the trial court erred by (1) denying his motion to suppress evidence obtained through the use of a Global Positioning System ("GPS") device placed on his co-defendant's truck by the police; and (2) failing to make an inquiry or establish on the record that he validly waived his right to a jury trial. For the reasons explained below, we disagree and affirm.

"On appellate review of a ruling on a motion to suppress, the trial court's findings on disputed facts will be upheld unless clearly erroneous, and its application of the law to undisputed facts is subject to de novo review." (Citations and punctuation omitted.) *Brown v. State*, 295 Ga. 695, 697 (2) (763 SE2d 695) (2014).

So viewed, the record shows that on March 26, 2012, surveillance cameras recorded two black males in a light-colored, extended cab pickup truck leaving a Sandy Springs neighborhood where a burglary had taken place. Two days later, surveillance video showed the same color and type truck leaving an apartment complex following a burglary. When another burglary occurred in the same area on April 3, 2012, a detective began reviewing a license tag reader at an intersection in close proximity to the burglary locations for a light-colored, extended cab pick-up truck around the time of April 3rd burglary.

This review revealed a truck matching this description traveling in the direction of the apartment complex with an empty truck bed at 4:43 a.m. At 5:18 a.m., the tag reader showed the same light-colored extended cab pick-up truck returning through the intersection with what appeared to be an air conditioning unit in the truck bed. At 5:21 a.m., the police were notified of a burglary at the apartment complex in which a four-ton air conditioning unit was taken.

A police detective determined that the truck observed by the tag reader was registered to Lester Thompkins who resided in Clayton County. On April 5, the police observed Thompkins leave his residence dressed all in black around 1:30 a.m. and return around 5:00 a.m. Later the same day, they obtained an order from the Clayton

County Superior Court for placement and monitoring of a GPS tracking device on Thompkins' truck. A detective placed the device on Thompkins' truck at 11:00 p.m. the same day.

A multi-jurisdictional burglary task force organized six of its members to conduct surveillance on the truck from the evening of April 5 through the early morning hours of April 6. Investigators were assigned to various locations so that the truck could be watched almost continuously. At 2:26 a.m., the truck left Thompkins' home and then stopped at 2:48 a.m. near Green's residence, where a member of the task force saw "a black male, dressed all in black g[e]t into the passenger side of the pickup truck while it was stopped."

A combination of GPS monitoring and task force surveillance showed that the truck traveled in and out of various apartment complexes located near Cumberland Parkway in Cobb County. Task force members did not have the vehicle in sight at all times. A task force member saw the truck approaching an apartment complex located at 50 Adams Lake Boulevard while occupied by two black males, but lost sight of the truck before it entered the front gate; GPS monitoring showed that the truck entered the apartment complex. The police officer notified the Cobb County police department to assist them in entering the gated apartment complex. By the time the

Cobb County officers arrived ten or fifteen minutes later, GPS monitoring showed that the truck had left the apartment complex.

When a Cobb County police officer entered the apartment complex, he discovered forced entry into a maintenance shed. Police asked an on-call maintenance technician for the complex to come to the shed and make a list of missing items. The technician informed them that two tool boxes had been taken and that these items had been present less than 12 hours earlier.

Approximately one hour after entering the Adams Lake Boulevard complex, the truck returned to Thompkins' Riverdale address, where a police officer saw it back into the driveway. Thompkins and Green got out of the truck and began to unload various items from the truck bed, including what appeared to be a red air compressor and two very large toolboxes. After unloading the truck, the men re-entered it, and Thompkins drove it through various locations in south Fulton County, Riverdale, and Clayton County for approximately 90 minutes.

When the truck returned to Thompkins' home, officers stopped it as it was backing into the driveway and detained both men by placing them in the back of a patrol car in handcuffs. After obtaining a search warrant for Thompkins' residence, the task force discovered an identification card for the Adams Lake Boulevard

4

apartment's maintenance technician inside a drawer of the large toolbox previously unloaded from the truck bed. The GPS monitoring of the truck lasted a total of eight hours.

Thompkins and Green were indicted in Cobb County for the Adams Lake Boulevard burglary and were tried together. Before trial, Thompkins filed a written motion to suppress evidence illegally acquired through use of the GPS tracking device in violation of his Fourth Amendment rights. He also contended that the Clayton County Superior Court's order was "unlawful" and "illegally acquired." His assertions included that: (1) the order authorizing installation of the GPS device and GPS monitoring was not supported by probable cause; and (2) the Clayton County Superior Court lacked jurisdiction to authorize GPS monitoring of the vehicle outside of Clayton County.

Green "adopted as his own the co-defendant's motion to suppress." In the motion to suppress hearing, Green argued that he had standing to contest evidence acquired through the use of the GPS device placed upon Thompkins' truck. The trial court reserved ruling on the motion and asked the parties to provide him with a proposed order within ten days. It subsequently denied both defendants' motions "because probable cause existed for the issuance of the [GPS monitoring] Order and

5

because the Order was complied with by State law enforcement authorities." It also concluded that the Clayton County Superior Court could authorize GPS monitoring outside of Clayton County.

Following his conviction on July 16, 2013, Green filed a timely motion for new trial. He later amended his motion to assert that the trial court should have suppressed evidence resulting from the GPS monitoring of Thompkins' truck based upon this court's decision in *Hamlett v. State*, 323 Ga. App. 221 (753 SE2d 118) (2013). The trial court denied this portion of Green's motion for new trial, reasoning:

> The Court finds that Defendant does not have standing to challenge the order authorizing police to place a tracking device on his codefendant's vehicle or to the execution of that order by the police. Defendant has asserted no interest in the co[-]defendant's pickup truck; he has asserted no interest in property seized by a subsequent search of his co[-]defendant's residence; and he has identified no recognized expectation of privacy that the police violated during the investigation that led to Defendant's arrest. Defendant's lack of standing forecloses his claims that the Court erred in not granting a motion to suppress evidence for any of the grounds asserted in his Amended Motion for New Trial.

1. Green contends that the trial court erred in finding that he lacked standing. "The burden is on the defendant to show that he has standing to contest the alleged

6

violation." (Citation and punctuation omitted.) *Brown v. State*, 295 Ga. 695, 698 (2) (763 SE2d 710) (2014).

In *Jones v. United States*, U. S. (132 SCt 945; 181 LE2d 911) (2012), the Supreme Court of the United States held that "the Government's installation of a GPS device on a target's vehicle, and its use of that device to monitor the vehicle's movements, constitutes a 'search'" under the Fourth Amendment.[1] 132 SCt at 949 (II) (A). It did so, not based upon "the reasonable-expectation-of-privacy" test enunciated in *Katz v. United States*, 389 U. S. 347, 351 (88 SCt 507; 19 LE2d 576) (1967), but

---

[1] It is important to note the limitations of the Supreme Court's holding in *Jones*, supra. It expressly declined to address the appellant's ability to raise a Fourth Amendment objection because he was the "exclusive driver" as opposed to the registered owner. 132 SCt. at 949 n. 2 (II) (A). The Supreme Court did note in dicta that "if Jones was not the owner he had at least the property rights of a bailee." Id. And while it affirmed the D. C. Circuit Court of Appeals' decision in *United States v. Maynard*, 615 F3d 544 (D. C. Cir. 2010), it did *not* adopt its reasoning. As one commentator has noted, the D. C. Circuit "articulated a 'mosaic theory,' observing that 'the whole of one's movements is not exposed constructively even though each individual movement is exposed, because that whole reveals more - sometimes a great deal more - than does the sum of its parts.'" (Citation and footnote omitted.) Murphy, *Back to the Future: The Curious Case of United States v. Jones*, 10 Ohio St. J. Crim. L. 325, 332 (2012). Therefore, this court's previous extended quote from this portion of the D. C. Circuit's opinion in *Maynard*, supra, should *not* be construed as the proper analysis to be employed in Fourth Amendment cases in Georgia. See *Hamlett v. State*, 323 Ga. App. 221, 227 n. 10 (753 SE2d 118) (2013). Cf. *Jordan v. Moses*, 291 Ga. 39, 41-43 (727 SE2d 460) (2012) (Court of Appeals improperly cited law from its own decision rather than Supreme Court opinion affirming the decision).

7

instead a "common-law trespassory test." Id. at 952 (II) (A). Based upon this test, the Supreme Court reasoned that the government's conduct in physically occupying private property for the purpose of obtaining information "would have been considered a 'search' within the meaning of the Fourth Amendment when it was adopted." Id. at 949 (II) (A). In reaching this conclusion, the Supreme Court clarified that "the *Katz* reasonable-expectation-of-privacy test had been *added to*, not *substituted for*, the common-law trespassory test." (Emphasis in original.) Id. at 952. See also *Florida v. Jardines*, U. S. (II) (133 SCt 1409, 1414; 185 LE2d 495) (2013). Therefore,

> When one contends that he was aggrieved by an unreasonable search and seeks to suppress evidence obtained as a result of the search, he must show, among other things, that an agent of the government either trespassed upon his property, see *United States v. Jones*, ___ U.S. ___ (II) (A) (132 SCt 945, 181 LE2d 911) (2012), or invaded some other place or thing in which he has a reasonable expectation of privacy. See *Bond v. United States*, 529 U. S. 334, 337-339 (120 SCt 1462, 146 LE2d 365) (2000).

*Hatcher v. State*, 314 Ga. App. 836, 838 (1) (726 SE2d 117) (physical precedent only), cert. denied, 314 Ga. App. 909 (2012).

8

In this case, Green asserts that he has standing based upon his reasonable expectation of privacy. But in *Devega v. State*, 286 Ga. 448 (689 SE2d 293) (2010), the Supreme Court of Georgia held that no Fourth Amendment violation occurred when police investigators asked a cell phone provider to "ping" the defendant's phone and send a signal to locate it through the use of the phone's GPS system. Id. at 453-454 (4) (d). The Supreme Court reasoned that the defendant

> had no reasonable expectation of privacy while traveling in his car on Cobb Parkway and onto the base. When he traveled over the public streets he voluntarily conveyed to anyone who wanted to look the fact that he was traveling over particular roads in a particular direction, the fact of whatever stops he made, and the fact of his final destination when he exited from public roads onto the base.

(Citation and punctuation omitted.) Id. at 454 (4) (d). See also *Smarr v. State*, 317 Ga. App. 584, 593-595 (3) (c) (732 SE2d 110) (2012).

Green attempts to distinguish *Devega*, on the ground that it was decided before *Jones*, supra, and therefore "may well have been changed by *Jones*." But the *Jones* majority did not apply a reasonable expectation of privacy analysis, and it is undisputed that Green had no property interest in Thompkins' truck as a mere passenger. Consequently, the Georgia Supreme Court's opinion still controls over the

9

facts presented here. Additionally, other jurisdictions considering the standing of a passenger to assert a Fourth Amendment violation based upon GPS tracking of another's vehicle have reached similar results. See *United States v. Davis*, 750 F3d 1186, 1191 (A) (10th Cir. 2014), cert. denied, *Davis v. United States*, U. S. (135 SCt 989; 190 LE2d 868) (2015); *United States v. Cabrera*, No. 11-117-GMS, 2014 U.S. Dist. LEXIS 96288, at * 24-28 (I) (D. Del., July 15, 2014); *United States v. Allen*, No. 1:13-cr-00108, 2014 U. S. Dist. LEXIS 47588, at *14-17 (II) (A) (S.D. Ind., April 7, 2014); *Hendrix v. United States*, Case No. 1:12CV00017SNLJ, 2013 U.S. Dist. LEXIS 78865, *11 (III) (C) (E. D. Mo. June 5, 2013); *United States v. McCoy*, Case No. 2:11-cr-438-MMD-CWH, 2012 U.S. Dist. LEXIS 190273, at * 9-13 (II) (A) (1) (D. Nev., August 9, 2012). Compare *Commonwealth v. Rousseau*, 990 NE2d 543, 552-553 (1) (b) (Mass. 2013) (fact that police monitored passenger's movements with GPS tracker over a 31-day period sufficient to confer standing under Massachusetts Declaration of Rights). We therefore affirm the trial court's denial of Green's motion to suppress based upon his lack of standing.

Green cites a footnote to our post-*Jones* decision in *Hamlett*, supra, to support his contention that he nonetheless has standing to complain. 323 Ga. App. at 221, 222

10

n. 1. But this footnote is non-binding dicta.[2] Our analysis in *Hamlett* is therefore limited to the Fourth Amendment claim of a vehicle owner with regard to the placement of a GPS tracking device.

Moreover, while a passenger has standing to challenge the constitutionality of a traffic stop generally, a passenger cannot challenge his detainment based upon an independent violation of another person's Fourth Amendment rights. *Davis*, supra. As the Tenth Circuit Court of Appeals has explained in a similar case,

> the fruit of the poisonous tree doctrine applies only when the defendant has standing regarding the Fourth Amendment violation which constitutes the poisonous tree. . . . So framed, th[is] case presents a classic "fruit of the poisonous tree" scenario, where the poisonous tree—the GPS device—bore tainted fruit—the seizure of the car (and [the defendant]) and the discovery of the evidence therein. Because [the defendant] did not own or regularly drive the car to which the GPS device was attached, it appears he lacks a sufficient Fourth Amendment interest to challenge this derivative evidence. [The defendant] views the situation differently: at oral argument, his counsel identified the

---

[2] The issue of the passenger's standing was not before us as the passenger did not contend on appeal that his motion to suppress should have been granted based upon the illegal placement of the GPS tracking device. 323 Ga. App. at 221-222. Our holding that the conviction of both defendants must be reversed turned on the fact that they had been tried jointly. Id. at 232 n. 14 (1) (b). Therefore, suppression of the GPS evidence as to the owner of the car made the evidence unavailable for the State to use against his co-defendant. Id.

"poisonous tree, with respect to [the defendant]," as the subsequent stop, not the initial attachment and use of the GPS device. And because the stop resulted in a seizure of his person, he argues that he may reach back and "contest the warrantless GPS search to the extent it enabled the police to effect the stop of the Sentra."

We disagree. The warrantless attachment and use of the GPS device was the Fourth Amendment violation—the poisonous tree—that allowed agents to locate, stop, and seize evidence from the car in which [the defendant] was riding—the tainted fruit. . . . Because the poisonous tree was planted in someone else's orchard, [the defendant] lacks standing to challenge its fruits. . . .

Thus, [the defendant] cannot challenge the legality of the traffic stop in this case, as its legality turns on a violation of someone else's Fourth Amendment rights.

(Citations, punctuation and footnotes omitted.) *Davis*, supra, 750 F3d. at 1190-1191 (A). Similarly, Georgia courts have held: "A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." (Citations and punctuation omitted.) *Barlow v. State*, 327 Ga. App. 719, 722 (761 SE2d 120) (2014). "The Fourth Amendment right against unreasonable search and seizure is a personal right and may not be asserted

12

vicariously. [Cit.]" *Hall v. State*, 258 Ga. App. 502, 504 (1) (a) (574 SE2d 610) (2002). Accordingly, we have held that a visitor to an apartment present during the execution of a search warrant had no standing to contest the validity of the search warrant of another's property, even though that search resulted in the visitor's arrest. *Moody v. State*, 232 Ga. App. 499, 504 (4) (a) (502 SE2d 323) (1998). See also *Womble v. State*, 290 Ga. App. 768, 769 (1) (660 SE2d 848) (2008).

Finally, the Georgia Supreme Court's decision in *Wilder v. State*, 290 Ga. 13 (717 SE2d 457) (2011), does not require a different result. In *Wilder*, the Supreme Court held that the defendant had "standing to contest the *seizure* of *his own* personal property from the premises of another." (Emphasis in original.) Id. at 15 (1). Here, no property of Green was seized or searched by the police.

2. Based upon our holding in Division 1, we need not address Green's contention that the Clayton County Superior Court's order authorizing the police to monitor a GPS tracking device on Thompkins' truck outside of Clayton County was void.

3. In his remaining enumeration of error, Green contends that "[the trial court erred in not making an inquiry or establishing on the record that [he] personally, knowingly, voluntarily, and intelligently waived his right to a jury trial." We disagree.

13

A criminal defendant must personally and intelligently participate in the waiver of the constitutional right to a trial by jury. When the purported waiver of this right is questioned, the State bears the burden of showing that the waiver was made both intelligently and knowingly, either (1) by showing on the record that the defendant was cognizant of the right being waived; or (2) by filling a silent or incomplete record through the use of extrinsic evidence which affirmatively shows that the waiver was knowingly and voluntarily made.

(Citation and punctuation omitted.) *Seidman v. State*, 320 Ga. App. 646 (740 SE2d 368) (2013). "The waiver, however, need not follow any particular form. The only real issue is whether the defendant intelligently agreed to a trial without jury." (Citation, punctuation and footnote omitted.) *Simmons v. State*, 321 Ga. App. 743, 745 (1) (743 SE2d 434) (2013). On appeal, "[we will affirm a trial court's determination that a defendant validly waived the right to a jury trial unless that determination is clearly erroneous." (Citation, punctuation and footnote omitted.) Id.

Here, the record shows that Green signed a "Consent for Trial Before Judge and Waiver of Right to a Jury Trial." This document was filed with the trial court one day before Green's trial, and the same day on which it was signed. It was signed by Green and his attorney and acknowledged that he had a right to a trial by a jury of 12 persons, the right to a unanimous verdict, and the right to be determined guilty

14

beyond a reasonable doubt by the jury. It stated that he voluntarily and "upon his own free will and accord" was signing the consent form and giving up his right to a trial by jury and consenting to the trial judge determining his guilt or innocence. Finally, it stated that no one forced or threatened him to sign the consent form. At the beginning of the trial, the trial court stated, "We're here for a bench trial. Both defendants have waived their jury trial."

> Although Georgia appellate courts have often noted that it would be preferable to have defendant's personal participation spread on the record in open court, to forestall subsequent claims of lack of participation or an intelligent or knowing waiver, nonetheless, there is no legal precedent requiring an in court waiver of the right of a jury trial.

*Seidman*, supra, 320 Ga. App. at 649. Based upon the totality of the circumstances here, the record shows that the State fulfilled its burden of demonstrating that Green personally, voluntarily, knowingly, and intelligently waived his right to a jury trial. See id.; *Gardner v. State*, 261 Ga. App. 425, 426 (2) (582 SE2d 566) (2003).

*Judgment affirmed. Branch, J., concurs and Barnes, P. J., concurs specially in Division 1 and concurs fully in Divisions 2 and 3.*

15

A14A1849.  GREEN v. STATE.

BARNES, Presiding Judge, concurring specially.

While I concur fully in Divisions 2 and 3 of the majority opinion and in the majority's conclusion that the trial court's denial of the motion to suppress should be affirmed, I do not agree with all that is said in Division 1.  Therefore, the majority's decision in Division 1 is physical precedent only.  Court of Appeals Rule 33 (a).

I agree with the majority that the reasonable-expectation-of-privacy test first formulated by Justice Harlan in his concurrence in *Katz v. United States*, 389 U.S. 347, 360 (88 SCt 507, 19 LE2d 576) (1967), applies in the present case, given that Green was a mere passenger in the vehicle to which the Global Positioning System ("GPS") device was attached.[1]  I write separately, however, to emphasize that the GPS tracking at issue here lasted for 8 hours, and thus this case does not address whether law enforcement's use of GPS for longer term monitoring of an individual's movements would impinge on reasonable expectations of privacy under *Katz*.

_____

[1] The *Katz* test also would apply in situations involving electronic monitoring of a vehicle where there has been no physical invasion of property, such as where the law enforcement officers monitor a GPS device installed by the vehicle driver or car manufacturer rather a device physically attached to the vehicle by the officers.

Nor has the issue of long-term GPS tracking and its privacy implications been addressed by the Supreme Court of Georgia. In *Devega v. State*, 286 Ga. 448, 453 (4) (d) (689 SE2d 293) (2010), police investigators relied upon "ping" information to locate a cell phone through its GPS system. Investigators used the information to track a vehicle as it traveled on a roadway to its destination. Id. Based on those facts, the Georgia Supreme Court held that the defendant had no reasonable expectation of privacy to challenge the tracking on Fourth Amendment grounds. Id. at 453-454 (4) (d). *Devega*, therefore, did not address a situation where the investigators used a GPS system for more extensive, long-term surveillance.

Notably, however, since the Georgia Supreme Court's decision in *Devega*, a majority of the justices of the Supreme Court of the United States have indicated that long-term GPS monitoring of a person would impinge upon reasonable expectations of privacy and constitute a "search" of the person under the Fourth Amendment. In *United States v. Jones*, __U.S. __ (132 SCt 945, 181 LE2d 911) (2012), Justice Alito wrote a concurrence joined by Justices Ginsburg, Breyer and Kagan. Justice Alito concluded that "the use of longer term GPS monitoring in investigations of most offenses impinges on expectations of privacy." Id. at 964. Justice Sotomayor wrote a separate concurrence, but expressly agreed with Justice Alito regarding the use of

2

long-term GPS monitoring of an individual.  See id. at 955 ("I agree with Justice Alito that, at the very least, longer term GPS monitoring in investigations of most offenses impinges on expectations of privacy.")  Hence, a majority of the justices would appear to accept that long-term GPS surveillance of an individual violates his or her reasonable expectation of privacy under *Katz*.

Nevertheless, ultimate resolution of the long-term surveillance issue and its Fourth Amendment implications must wait for another day.  Given the relatively abbreviated nature of the GPS monitoring that occurred in this case, Green had no reasonable expectation of privacy that would permit him to challenge the monitoring under the Fourth Amendment.