FILED
United States Court of Appeals
Tenth Circuit

May 7, 2014

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

MARK R. DAVIS,

     Defendant - Appellant.

No. 13-3037

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. No. 2:11-CR-20020-CM-2)**

---

Howard Pincus, Assistant Federal Public Defender, (Virginia L. Grady, Federal Public Defender, Interim, and Warren R. Williamson, Federal Public Defender, Interim, with him on the briefs) Denver, Colorado, for Defendant - Appellant.

James A. Brown, Assistant United States Attorney, (Barry R. Grissom, United States Attorney, with him on the brief) Topeka, Kansas, for Plaintiff - Appellee.

---

Before **KELLY**, **BALDOCK**, and **HARTZ**, Circuit Judges.

---

**KELLY**, Circuit Judge.

---

     Defendant–Appellant Mark R. Davis was convicted by a jury of robbery, 18

U.S.C. § 1951 (Count 20), use of a firearm during a robbery, 18 U.S.C. § 924(c)

(Count 21), and being a felon in possession of a firearm, 18 U.S.C. § 922(g) (Count 23). He was sentenced to 96 months' imprisonment on the robbery count, 180 months' imprisonment on the felon-in-possession count, consecutive to the robbery count, and 84 months' imprisonment on the use-of-a-firearm count, consecutive to the other two counts, for a total of 360 months. I R. 105-106. He also was sentenced to three years' supervised release on each count running concurrently. Id. On appeal, he challenges (1) the denial of his motion to suppress evidence seized from a car in which he was a passenger, (2) the jury instructions insofar as they allowed the jury to convict him of aiding and abetting without the requisite knowledge or participation, and (3) sufficiency of the evidence concerning a substantial effect on interstate commerce. Our jurisdiction arises under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), and we affirm.

Background

On March 3, 2011, police were notified that someone just robbed the RadioShack in Overland Park, Kansas. II R. 404-05. FBI agents later stopped a gray Nissan Sentra on 71 Highway in Kansas City, Missouri, and arrested the occupants—the driver, Abasi S. Baker, and the passenger, Mr. Davis. Id. at 98, 451-54. In the car, agents found clothing matching the description of the robbers, a gun, and a bag containing $261, which was a little less than the amount stolen. Id. at 456, 462, 469-72, 825. Mr. Baker and Mr. Davis were separately tried and

convicted of robbery and firearms offenses.[1]  How agents were able to locate the car containing Mr. Davis is at issue in this appeal.

The car belonged to neither Mr. Davis nor Mr. Baker but rather Mr. Baker's girlfriend, although Mr. Baker drove it also.  Id. at 262-63.  An investigation into armed robberies around Kansas City, Kansas, in early 2011 led police to suspect that the robbers were using the car owned by Mr. Baker's girlfriend.  On March 2, 2011, without a warrant, agents installed a Global-Positioning-System (GPS) tracking device to the rear bumper of the car while it was parked at an apartment in Kansas City, Missouri.  Id. at 574-75.  The day before, agents obtained a search warrant to track the GPS signal given off by Mr. Baker's cell phone.  Id. at 678-79.

Around 7:20 p.m. on March 3, 2011, Special Agent John Hauger received emails relaying GPS coordinates from the car and Mr. Baker's phone.  Id. at 688-89.  The coordinates put the car and phone in the area of 75th Street and Metcalf Avenue in Overland Park, Kansas.  Id.  Agent Hauger called the Overland Park Police Department and learned that, sure enough, the RadioShack at 75th and Metcalf had been robbed at 7:18 p.m.  Id. at 689.  A scramble ensued.  Using a combination of GPS coordinates from the car and phone, visual observations, and knowledge that Mr. Baker resided near 71 Highway, agents were able to locate

---

[1]  This court affirmed Mr. Baker's conviction in a separate appeal.  United States v. Baker, 713 F.3d 558 (10th Cir.), cert. denied, 134 S. Ct. 784 (2013).

and stop the car containing Mr. Baker and Mr. Davis.  Id. at 486-92, 695-700.

In police interviews, Mr. Davis confessed that he knew Mr. Baker planned to rob the RadioShack.  Id. at 579.  Mr. Davis contended that Mr. Baker entered the store while he remained in the car, id., and that he saw Mr. Baker pull a gun from his waistband after exiting the RadioShack and re-entering the car, id. at 543.  The government charged Mr. Davis with robbery, using or carrying a firearm during a robbery, being a felon in possession of a firearm, and aiding and abetting those offenses, 18 U.S.C. §§ 1951, 924(c)(1)(A)(ii), 922(g)(1), 2.  I R. 42-46.

In the district court, Mr. Davis moved to suppress the evidence found in the car arguing that, under subsequently decided United States v. Jones, 132 S. Ct. 945 (2012), the warrantless attachment and use of the GPS device to locate and seize the car violated the Fourth Amendment.  I R. 50; II R. 89-90.  The district court denied Mr. Davis's motion, finding that (1) the stop was legal because, "even without the GPS" device on the car, agents had more than enough information to locate the car and reasonable suspicion to stop it; (2) Mr. Davis lacked standing to challenge the search of the car; and (3) agents attached the GPS device to the car with the then-objectively reasonable good-faith belief that their conduct was lawful.  II R. 100-04.

At trial, the government proceeded on the theory that Mr. Davis entered the RadioShack and robbed it at gunpoint.  II R. 1018-19, 1034.  The defense

- 4 -

contended that Mr. Baker entered the store while Mr. Davis remained in the car as an unwitting accomplice, lacking knowledge of Mr. Baker's plan to rob the store and brandish a gun. Id. at 1024. The government maintained that, even if it was Mr. Baker who entered the store, the evidence permitted the jury to find Mr. Davis guilty of the robbery and firearms offenses as an aider and abettor. Id. at 1014, 1035. The district court instructed on the elements of each count in the indictment. Doc. 142, at 12-14. It also instructed on aiding and abetting. Id. at 20. Specifically, the court informed the jury that, to be an aider and abettor, a defendant must "consciously share[] the other person's knowledge of the underlying criminal act and intend[] to help him or her." Id. Defense counsel did not object to this instruction. II R. 1004-05.

The jury returned a general verdict against Mr. Davis, convicting him of robbing the RadioShack, using or carrying a firearm during that robbery, and being a felon in possession of a firearm. I R. 91-92. While appeal was pending, the United States Supreme Court decided United States v. Rosemond, 134 S. Ct. 1240 (2014), which addresses the elements of aiding and abetting a § 924(c) offense.

## Discussion

A.    Motion to Suppress

When reviewing the denial of a motion to suppress, we review questions of

law, such as whether a defendant has standing to challenge a search, de novo. United States v. DeLuca, 269 F.3d 1128, 1131 (10th Cir. 2001).  Although the district court offered three grounds for denying Mr. Davis's motion, we need only address standing.[2]

United Sates v. Jones settled that the attachment of a GPS device to a car, and subsequent use of that device to monitor the car's movements, is a "search," 132 S. Ct. at 949, and that installing such a device without a warrant potentially violates the Fourth Amendment.[3]  As the party seeking suppression, Mr. Davis must demonstrate that it was his Fourth Amendment rights that were violated in this regard.  See Rakas v. Illinois, 439 U.S. 128, 130 n.1 (1978).  This is because "Fourth Amendment rights are personal rights which . . . may not be vicariously asserted."  Id. at 133-34 (quoting Brown v. United States, 411 U.S. 223, 230

---

[2]  Applying the good-faith exception of Davis v. United States, 131 S. Ct. 2419 (2011), several Circuits have held that, before Jones, it was objectively reasonable for police to believe that warrantless GPS tracking did not violate the Fourth Amendment.  See United States v. Fisher, --- F.3d ---, 2014 WL 888522, at *4 (6th Cir. Mar. 7, 2014); United States v. Ransfer, 743 F.3d 766, 777 (11th Cir. 2014); United States v. Aguiar, 737 F.3d 251, 262 (2d Cir. 2013); United States v. Sparks, 711 F.3d 58, 63 (1st Cir. 2013); United States v. Andres, 703 F.3d 828, 835 (5th Cir. 2013); United States v. Pineda-Moreno, 688 F.3d 1087, 1091 (9th Cir. 2012); but see United States v. Katzin, 732 F.3d 187, 206-10 (3d Cir. 2013), reh'g granted and opinion vacated, No. 12-2548, 2013 WL 7033666 (3d Cir. Dec. 12, 2013).  We need not decide the good-faith issue, as standing is a sufficient ground to affirm the district court's denial of Mr. Davis's suppression motion.

[3]  The government contends that warrantless attachment and use of a GPS device does not necessarily violate the Fourth Amendment after Jones.  Aplee. Br. 29-30.  We save this issue for another day.

(1973)).  Although this principle is often called "standing," the idea that personal Fourth Amendment rights must be at stake "is more properly subsumed under substantive Fourth Amendment doctrine."  Id. at 139; United States v. Erwin, 875 F.2d 268, 269 (10th Cir. 1989).  Thus, whether a Fourth Amendment violation occurred turns on "whether a passenger of a vehicle has sufficient Fourth Amendment interests to challenge a traffic stop of that vehicle."  Erwin, 875 F.2d at 270.

Standing is required regardless of whether the illegal search directly yields the inculpating evidence or merely supplies the initial catalyst in a reaction ultimately producing such evidence.  As we have said, "the fruit of the poisonous tree doctrine applies only when the defendant has standing regarding the Fourth Amendment violation which constitutes the poisonous tree."  United States v. Olivares-Rangel, 458 F.3d 1104, 1117 (10th Cir. 2006) (citing United States v. Salvucci, 448 U.S. 83, 85 (1980)).

Mr. Davis's suppression motion presents a narrow question of law: whether a passenger has standing to challenge the stop of a car when that stop is predicated on information obtained from a prior search of that car.  So framed, the case presents a classic "fruit of the poisonous tree" scenario, where the poisonous tree—the GPS device—bore tainted fruit—the seizure of the car (and Mr. Davis)

and the discovery of the evidence therein.[4]  Because Mr. Davis did not own or

regularly drive the car to which the GPS device was attached, it appears he lacks

a sufficient Fourth Amendment interest to challenge this derivative evidence.  Mr.

Davis views the situation differently: at oral argument, his counsel identified the

"poisonous tree, with respect to Mr. Davis," as the subsequent stop, not the initial

attachment and use of the GPS device.  Oral Argument at 9:30, United States v.

Davis, No. 13-3037 (March 20, 2014).  And because the stop resulted in a seizure

of his person, he argues that he may reach back and "contest the warrantless GPS

search to the extent it enabled the police to effect the stop of the Sentra."  Aplt.

Br. 32.

We disagree.  The warrantless attachment and use of the GPS device was

the Fourth Amendment violation—the poisonous tree—that allowed agents to

locate, stop, and seize evidence from the car in which Mr. Davis was riding—the

tainted fruit.[5]  On appeal, Mr. Davis does not allege a possessory interest or

---

[4]  Mr. Davis's counsel made a similar assessment, arguing at the
suppression hearing that it was the car's GPS "data that . . . allowed the swarm of
law enforcement to ultimately seize the vehicle and [Mr. Davis].  So, it's a—a
fruit upon a fruit upon a fruit."  II R. 89.

[5]  At oral argument, Mr. Davis's counsel pointed to footnote 29 of the Third
Circuit's decision in Katzin, 732 F.3d 187, to support the notion that a prior
search and subsequent traffic stop form a unitary event, one that implicates the
Fourth Amendment rights of all occupants in a vehicle.  We are not persuaded by
the Third Circuit's cursory handling of the standing issue in Katzin.  Moreover,
by the time Katzin was cited at oral argument, the Third Circuit had vacated the
opinion and voted to rehear the case en banc.  Katzin, No. 12-2548, 2013 WL
7033666 (3d Cir. Dec. 12, 2013).

reasonable expectation of privacy in Mr. Baker's girlfriend's car; the district court found he had neither. II R. 101-02. Because the poisonous tree was planted in someone else's orchard, Mr. Davis lacks standing to challenge its fruits. See Olivares-Rangel, 458 F.3d at 1117.

To avoid this conclusion, Mr. Davis points to cases in which this court has held that, "[e]ven if defendant lacks standing to challenge the search of the car, if the initial stop was illegal, the seized contraband is subject to exclusion under the 'fruit of the poison tree' doctrine." Erwin, 875 F.2d at 269 n.2; see also United States v. Eylicio-Montoya, 70 F.3d 1158, 1163-64 (10th Cir. 1995). The obvious difference between these cases and Mr. Davis's is that, in those cases, an initial stop led to a subsequent search of the car; in Mr. Davis's case, an initial search of the car led to a subsequent stop. See United States v. Seslar, 996 F.2d 1058, 1063 (10th Cir. 1993) ("subsequent search of the truck . . . [was] tainted by the unconstitutional stop"). And in those cases, the initial stop was allegedly pretextual, i.e., not founded upon reasonable suspicion of criminal activity. See, e.g., Erwin, 875 F.2d at 272 (passenger argued stop was "pretext to conduct an illegal search for drugs"); Eylicio-Montoya, 70 F.3d at 1160 (passenger argued stop "was not supported by reasonable suspicion"). That passengers have standing to challenge a pretextual stop follows from the principle that a passenger is "seized" during a traffic stop, see Brendlin v. California, 551 U.S. 249, 251 (2007), and if police lacked reasonable suspicion to stop the car, then the

passenger is seized unreasonably, thus violating personal Fourth Amendment rights, see Erwin, 875 F.2d at 270 ("Drivers and passengers have similar interests in seeing that their persons remain free from unreasonable seizure.").

Mr. Davis's case is very different. Agents did not stop the car in which he was riding based on pretext. Rather, agents located and stopped the suspected getaway car based on information from a variety of sources—one of which happened to be an allegedly unconstitutional search. That search might have violated someone's rights, but not those of Mr. Davis. "After all," as Mr. Davis notes, he "was just a passenger in a vehicle belonging to [Mr.] Baker's girlfriend." I R. 52. Thus, Mr. Davis cannot challenge the legality of the traffic stop in this case, as its legality turns on a violation of someone else's Fourth Amendment rights.[6]

B.    Aider-and-Abettor Jury Instruction

Because Mr. Davis did not timely and specifically object to the jury instruction below, we review his arguments only for plain error. United States v. Rosalez, 711 F.3d 1194, 1212 (10th Cir. 2013). Under Federal Rule of Criminal Procedure 52(b), "an appellate court may, in its discretion, correct an error not raised at trial only where the appellant demonstrates that (1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the

_____

[6] We have considered Mr. Davis's pro se communication received April 17, 2014. However, as he addresses only the district court's independent-source finding, his arguments do not affect our determination that he lacks standing.

error affected the appellant's substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings; and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings." United States v. Marcus, 560 U.S. 258, 262 (2010) (internal quotation marks and bracket omitted).

The district court first instructed jurors on the substantive offenses with which Mr. Davis was charged; this included § 924(c), which "makes it a crime to use or carry a firearm during and in relation to a crime of violence (which includes robbery)." Doc. 142, at 16. The district court then gave a general instruction on aider-and-abettor liability (18 U.S.C. § 2). Id. at 20. The court instructed that "[e]ach count" of the indictment charged Mr. Davis as an aider and abettor, and to find Mr. Davis guilty under this theory, the jury must be convinced that:

> **First**:     someone else committed the charged crime, and
>
> **Second**:     defendant intentionally associated himself in some way with the crime and intentionally participated in it as he would in something he wished to bring about. **This means that the government must prove the defendant consciously shared the other person's knowledge of the underlying criminal act and intended to help him or her.**

Id. (emphasis added); see also 10th Cir. Crim. Pattern Jury Instruction 2.06

- 11 -

(2011). The jury convicted Mr. Davis of violating § 924(c). I R. 91-92. The verdict form was general; it did not reveal whether the jury found that Mr. Davis used the gun or instead aided and abetted Mr. Baker's use during the robbery. Id.

Mr. Davis argues that this general aider-and-abettor instruction was plainly erroneous as it relates to § 924(c). Aplt. Br. 57. It was "so vague," he argues, that jurors could have read "charged crime" and "underlying criminal act" to refer to the robbery itself, thus allowing jurors to convict him of aiding and abetting Mr. Baker's use of a firearm even if he was not aware that Mr. Baker was armed. Id. at 57-58. Mr. Davis also argues that the instruction was erroneous because it did not include language that he must have "sought by his actions" to facilitate the § 924(c) offense. Id. at 59.

The government concedes error based on subsequent authority—Rosemond v. United States, 134 S. Ct. 1240 (2014). Oral Argument at 17:48, United States v. Davis, No. 13-3037 (March 20, 2014). Notwithstanding, it argues that Mr. Davis cannot establish that this error affected his substantial rights or the fairness of his trial. Id. at 18:32. It contends that, because jurors were instructed on the elements of § 924(c) and heard evidence that Mr. Davis was the one who entered the store with a gun, the jury could have convicted Mr. Davis as a principal without relying on the aider-and-abettor instruction. Aplee. Br. 52.

If the principal theory were the only one submitted to the jury, then we would agree with the government that there was more-than-sufficient evidence to

- 12 -

convict Mr. Davis. See Aplee. Br. 52-53. However, we cannot affirm a general verdict based on the fact that there is sufficient evidence to convict on a properly instructed theory of conviction when jurors are also "improperly instructed on a legally inadequate theory." United States v. Ayon Corrales, 608 F.3d 654, 658 (10th Cir. 2010). This is "because in such cases jurors are not generally equipped to determine whether a particular theory of conviction submitted to them is contrary to law." Id. (internal quotation marks omitted). We, on the other hand, are equipped to make such determination.

Regardless of the parties' contentions on appeal, we always have a duty to examine whether the district court committed error, plain or otherwise, even when a party concedes it. See United States v. Hoyle, 697 F.3d 1158, 1167 n.4 (2012). Rosemond was an appeal from a decision of this court, 695 F.3d 1151 (10th Cir. 2012), vacated and remanded, 134 S. Ct. 1240 (2014), dealing with aider-and-abettor liability for § 924(c). Following circuit precedent, we held that an instruction for aiding and abetting § 924(c) was sufficient if it instructed that jurors must find "'(1) the defendant knew his cohort used a firearm in the drug trafficking crime, and (2) the defendant knowingly and actively participated in the drug trafficking crime.'" Id. at 1155. The Supreme Court disagreed. 134 S. Ct. at 1252.

The Court noted that § 924(c) is a "double-barreled crime" that requires (1) using or carrying a firearm (2) when engaged in a predicate "crime of violence or

- 13 -

drug trafficking crime." Id. at 1245. To aid and abet § 924(c), a defendant must intend to commit "the illegal scheme in its entirety—including its use of a firearm." Id. at 1249. The Court held that the first half of the district court's instruction—dealing with intent—was deficient because it "did not direct the jury to determine when Rosemond obtained the requisite knowledge" that a firearm would be used or carried. Id. at 1251-52. That knowledge, the Court said, "must be advance knowledge." Id. at 1249. The Court rejected the government's argument that the requisite knowledge was present "whenever the accomplice, having learned of the firearm, continues any act of assisting the [predicate crime of violence or drug trafficking crime]." Id. at 1250. To the contrary, "[i]n such a circumstance, a jury is entitled to find that the defendant intended only [the predicate crime]—that he never intended to facilitate, and so does not bear responsibility for, [that crime] carried out with a gun." Id. at 1251 (emphasis added).

Regarding the second half of the district court's instruction—dealing with conduct facilitating the crime—the Court held that "active participation in [the predicate crime] is sufficient for § 924(c) liability (even if the conduct does not extend to the firearm)." Id. at 1251. Thus, actions furthering the use or carriage of the firearm are not required because a defendant's "participation in the [predicate crime] satisfies the affirmative-act requirement for aiding and abetting a § 924(c) violation." Id. at 1247. This forecloses Mr. Davis's plain error

- 14 -

argument that he must have "sought by his actions" to facilitate the entire

"§ 924(c) offense." See Aplt. Br. 57, 59-60, 60 n.3.

After Rosemond, a jury instruction on aiding and abetting § 924(c) should

address the defendant's advance knowledge of the gun. The aider-and-abettor

instruction in this case did not highlight this point in relation to the § 924(c)

offense. But the general aider-and-abettor instruction did require Mr. Davis to

consciously share Mr. Baker's knowledge of the § 924(c) offense and that is

enough on a plain error challenge.

Mr. Davis confessed to advance knowledge of the robbery and seeing the

gun as Mr. Baker re-entered the car after exiting the RadioShack. Under

Rosemond, Mr. Davis was required to have knowledge of the gun before the

robbery. We do not require jury instructions to be perfect. Zierke v. Agri-Sys.,

992 F.2d 276, 278 (10th Cir. 1993). Rather, instructions must merely be

"adequate," United States v. Gallant, 537 F.3d 1202, 1233 (10th Cir. 2008), and,

when reviewed for plain error, free of "clear or obvious" errors, Marcus, 560 U.S.

at 262. The error addressed in Rosemond allowed the jury to convict based on

after-acquired knowledge of a firearm, i.e., based on evidence that Mr. Rosemond

"knew his cohort used a firearm." Rosemond, 134 S. Ct. at 1251 (emphasis

added). Here, the district court did not use this language, but rather gave a

general aider-and-abettor instruction, applying it to "[e]ach count of the

indictment." Doc. 142, at 20. Mr. Davis argues that this instruction was "so

- 15 -

vague" that the jury could not be expected to adequately relate it back to the § 924(c) count. Aplt. Br. 57-58.

We are not persuaded and find that an unnatural reading of the instruction. Jurors are generally presumed to follow the judge's instructions. United States v. Chanthadara, 230 F.3d 1237, 1251 (10th Cir. 2000). In this case, the aider-and-abettor instruction called for the jury to consider "[e]ach count of the indictment," one of which was § 924(c). Doc. 142, at 20. It required the jury to find that someone committed the "charged crime," id.; Mr. Baker and Mr. Davis were charged with § 924(c), id. at 13. Finally, it required the jury to find that Mr. Davis "shared [Mr. Baker]'s knowledge of the underlying criminal act," id. at 20; one of the criminal acts at issue was § 924(c), which "makes it a crime to use or carry a firearm during and in relation to a crime of violence (which includes robbery)," id. at 16. Thus, the instruction required the jury to determine whether Mr. Davis shared **Mr. Baker's knowledge** about the § 924(c) violation, which necessarily encompasses the planned use of a firearm. Stated another way, if indeed the jury took the aiding-and-abetting route to conviction on the § 924(c) count, it implicitly found that Mr. Davis had advance knowledge of the firearm.

AFFIRMED.[7]

---

[7] For the sake of preservation, Mr. Davis argues that the $270 taken from the RadioShack had a de minimis effect on interstate commerce and cannot support a Hobbs Act (18 U.S.C. § 1951) conviction. Aplt. Br. 64. He acknowledges, and we agree, that circuit precedent forecloses this argument. Id. at 2.

- 16 -

13-3037 – *United States v. Davis*

**HARTZ**, Circuit Judge, concurring:

I concur in the result and join all of Judge Kelly's opinion except the discussion of Mr. Davis's claim (not preserved in district court) that the jury instruction on aiding and abetting was erroneous because it did not require the jury to find that he knew before the robbery that a gun would be used. I would approach that issue somewhat differently.

To begin with, Mr. Davis's claim is based on a misconception of what constitutes a robbery. We have consistently held that the escape is part of the robbery. Indeed, we refer to the "escape phase of the bank robbery." *United States v. Von Roeder*, 435 F.2d 1004, 1010 (10th Cir. 1971) ("The escape phase of a crime is not, as appellant apparently argues, an event occurring 'after the robbery.' It is part of the robbery. One who participates in and assists in the escape of the parties who were in the bank aids and abets the bank robbery and is properly charged as a principal."), *vacated on other grounds sub nom. Schreiner v. United States*, 404 U.S. 67 (1971). *Accord United States v. Willis*, 102 F.3d 1078, 1083 (10th Cir. 1996); *United States v. Balano*, 618 F.2d 624, 631 (10th Cir. 1979) ("There is no doubt that one who assists an escape should be charged under 18 U.S.C. § 2 [aiding and abetting] rather than 18 U.S.C. § 3 [accessory after the fact]."). Therefore, it was enough that Mr. Davis knew of the gun before driving the escape car. It was undisputed at trial that Mr. Davis knew of the gun by that time, so any error in the instruction regarding the required timing of knowledge was inconsequential.

That would dispose of the matter except for a point raised by the Supreme Court's recent opinion in *Rosemond v. United States*, 134 S. Ct. 1240 (2014). According to the Court, if the alleged accomplice learned that the principal had a gun after there was "no realistic opportunity to quit the crime," *id.* at 1249, then he may not have aided and abetted the offense if he therefore lacked the requisite intent to "participate in [the venture] as in something that he wishe[d] to bring about," *id.* at 1248 (internal quotation marks omitted). The opinion noted the possibility that one who insisted that no gun be used in a drug offense would not be able to bail out if a confederate unexpectedly revealed a gun during the transaction. *See id.* at 1251. Mr. Davis has never argued that he was intimidated into driving the getaway car, but perhaps the issue must be addressed under plain-error review in light of *Rosemond*. Mr. Davis's argument would have to be that because the jury was not instructed that he had to know of the firearm before he assisted in the crime, the jury never had to consider whether he willingly drove the getaway car.

I would still find no plain error. Under the third prong of plain-error review, Mr. Davis must show that he was prejudiced by the allegedly faulty instructions. He has shown no such prejudice. There would be absolutely no reason for the jury to doubt that he willingly drove the getaway car. Although Mr. Davis told the law-enforcement officers that Mr. Baker was carrying a gun when he entered the getaway car, he went on to say that Mr. Baker then simply placed the gun by the steering wheel, hardly a threatening gesture. I do not read *Rosemond* to add to the traditional elements of aiding

2

and abetting a separate realistic-opportunity-to-quit element; rather, the point about having a realistic opportunity to quit was simply a corollary derived from the traditional elements. The holding of *Rosemond* is that the jury must be instructed that one cannot be guilty of aiding and abetting an offense unless he knows that all the elements of the offense have been or will be committed before he "participate[s] in it as in something that he wishes to bring about." *Id.* at 1248 (internal quotation marks omitted). If the defendant does not learn of one of the elements (say, the possession of a gun by the principal) until there is no longer a realistic opportunity to quit, the defendant may continue to participate in the offense even though the offense is not something he wishes to bring about. But it may well be, and I suspect that this will often be the case, that even when, say, the getaway driver learns something after it is too late to back out, the jury will still find that the driver wished the crime to succeed. The jury's verdict will depend on how it evaluates the evidence. The Court's point in *Rosemond* is simply that the jury must be properly instructed so that it does not render a guilty verdict without determining whether the defendant, having knowledge of all the elements of the crime, still participated with the wish that the crime succeed. Here, Mr. Davis has not suggested, and I see no reason to infer, that the jury would not have found him guilty under proper instructions. We do not speculate to find prejudice under the third prong of plain-error review.

3