**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 25, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

JUSTIN JAMES OCEGUEDA,

    Defendant-Appellant.

_____

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

HUGO PAGE SANTOS,

    Defendant-Appellant.

No. 14-4056
(D.C. No. 2:12-CR–00606-RJS-3)
(D. Utah)

N0. 14-4058
(D.C. No. 2:12-CR-00606-RJS-1)
(D. Utah)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE,** Chief Judge, **SEYMOUR** and **KELLY**, Circuit Judges.

Defendants Justin Ocegueda and Hugo Santos, each of whom entered a conditional

guilty plea to possessing 500 grams or more of methamphetamine with intent to

distribute, in violation of 21 U.S.C. § 841(a)(1), appeal from the district court's denial of

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

their joint motion to suppress evidence. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

I

*Factual background*

On September 23, 2012, Drug Enforcement Administration (DEA) Special Agent Ron Anson, based in Utah, was informed by a confidential informant (CI) with whom he had previously worked that an individual known by the name of "Brandon" could deliver approximately eight pounds of methamphetamine to the CI. Based upon this information, Anson directed the CI to report to Anson's office the following day, September 24, 2012.

At Anson's office, the CI made phone calls to Brandon regarding the purchase of methamphetamine. Anson recorded those conversations. During the recorded phone conversations, Brandon told the CI that the methamphetamine had been transported from California and that the transaction would take place later that same day at a hotel in Lehi, Utah.

Anson and other DEA task force members established surveillance of the area surrounding the hotel in Lehi. Two cars with California license plates were parked at the hotel. One of the vehicles was a silver Nissan Altima; the other vehicle was a red Ford Focus. A task force agent observed two individuals, later identified as Ocegueda and Santos, transfer something from the Nissan Altima to the Ford Focus and then drive the Ford Focus from the hotel to the parking lot of a nearby restaurant.

At approximately this same time, the CI, who had been outfitted by task force

2

members with transmitting and recording devices, arrived at the area in a vehicle and parked in a Utah Transit Authority Park and Ride lot (Park and Ride lot) near the restaurant. The CI then received a phone call from Brandon directing the CI to drive to the restaurant parking lot where Ocegueda and Santos were waiting. The CI complained to Brandon that there were too many people in the restaurant parking lot and suggested that the meeting occur at the Park and Ride lot instead. Brandon agreed. Thereafter, Ocegueda, with Santos in the passenger seat, drove the Ford Focus from the restaurant parking lot to the Park and Ride lot. Ocegueda ultimately located the CI's vehicle on the north side of the Park and Ride lot and parked next to it.

Ocegueda got out of the Ford Focus, walked to the CI's vehicle, and sat down inside it. Ocegueda then handed the CI a cell phone. Brandon was on the other end of the cell phone and informed the CI that he would not be coming to participate in the transaction, and that Ocegueda and Santos would instead handle the deal.

With that, Ocegueda got out of the CI's vehicle, walked to the back of the Ford Focus, opened the trunk, and pulled out a large bag. Ocegueda returned to the CI's vehicle with the bag and discussed with the CI the drugs that were contained in the bag. Ocegueda and the CI then cut into one of several wrapped packages contained in the bag so that the CI could purportedly assess the quality of the methamphetamine. The CI, upon observing the drugs contained in the package, spoke briefly with Ocegueda about their quality. During that conversation, the CI stated "this shit looks really good." App. at 127. That statement, per Anson's instructions to the CI prior to the transaction, served

3

as the CI's signal to the task force members that drugs had been received and positively identified.

Anson and the other task force members proceeded to arrest Ocegueda and Santos in the Park and Ride lot. At the time of their arrest, Santos was sitting in the driver's seat of the Ford Focus and Ocegueda was sitting in the passenger's seat. A search of the Ford Focus following the arrests produced 5,000 grams of methamphetamine.

Subsequent investigation by task force agents revealed that the Ford Focus was owned by a California resident named Geneva Bustamonte and had been driven from California to Utah by a women named Nicole Flores. The investigation also confirmed that Santos was the registered owner of the Nissan Altima.

*Procedural background*

On September 26, 2012, a complaint was filed in federal court charging Ocegueda and Santos with a single count of possession of 500 grams or more of methamphetamine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). Shortly thereafter, a federal grand jury indicted defendants on the same charge.[1]

Santos moved to suppress, arguing that the "search [of the Ford Focus] without a warrant was unconstitutional." Dist. Ct. Docket No. 70 at 3. Santos also argued that his arrest and the ensuing search of his person were "unlawful." Id. at 5. The government filed a brief in opposition asserting that Santos "lack[ed] standing to challenge the search

---

[1] Flores was also charged in the complaint and indictment. She is not, however, a party to this appeal.

of the [Ford Focus]." Dist. Ct. Docket No. 77 at 1. Ocegueda was subsequently permitted by the district court to join Santos' motion to suppress.

After conducting two evidentiary hearings and taking testimony from Santos and Anson, the district court issued a memorandum decision and order denying Santos' motion to suppress. In doing so, the district court concluded, in pertinent part, that Santos failed to meet his burden of establishing standing to challenge the search of the Ford Focus. The district court subsequently issued an order denying the motion to suppress as to Ocegueda for the same reasons stated in its memorandum decision and order.

On November 15, 2013, Ocegueda entered a conditional plea of guilty to the single count alleged in the indictment. On December 2, 2013, Santos also entered a conditional plea of guilty to the count alleged in the indictment. Both defendants, as part of their respective plea agreements, reserved the right to appeal the district court's denial of their joint motion to suppress.

On May 9, 2014, the district court sentenced Ocegueda and Santos and ordered each to serve a term of imprisonment of 120 months, to be followed by a 60-month term of supervised release. On request of defense counsel, the district court authorized both defendants to remain on release pending the outcome of their appeals.

Both Ocegueda and Santos subsequently filed timely notices of appeal.

II

On appeal, Ocegueda and Santos assert a number of challenges to the district court's denial of their joint motion to suppress evidence. We find it unnecessary to

address most of those arguments, however, because we agree with the district court that defendants lacked standing to challenge the search of the Ford Focus.

"Fourth Amendment rights are personal, and, therefore, a defendant cannot claim a violation of his Fourth Amendment rights based only on the introduction of evidence procured through an illegal search and seizure of a third person's property." United States v. Mosley, 743 F.3d 1317, 1322 (10th Cir. 2014) (internal quotation marks omitted). In other words, "the fruit of the poisonous tree doctrine applies only when the defendant has standing regarding the Fourth Amendment *violation* which constitutes the poisonous tree." United States v. Olivares-Rangel, 458 F.3d 1104, 1117 (10th Cir. 2006) (emphasis in original). Thus, a person seeking to suppress evidence produced as the result of a vehicle search challenge must establish that he has "a possessory or property interest in the vehicle searched." Mosley, 743 F.3d at 1322 (internal quotation marks omitted).

We review de novo the legal question of "whether a defendant has standing to challenge a search." United States v. Davis, 750 F.3d 1186, 1189 (10th Cir. 2014). In doing so, "we view the evidence in the light most favorable to the Government and accept the district court's factual findings unless clearly erroneous." United States v. Gilmore, 776 F.3d 765, 768 (10th Cir. 2015).

The district court made several factual findings that are relevant to the issue of the defendants' standing to challenge the search of the Ford Focus. To begin with, the district court found "that neither . . . Santos nor . . . Ocegueda held title to the Ford

6

Focus." App. at 24. Instead, the district court found, "title was held by Ms. Geneva Bustamonte." Id. at 25. The district court further found "no evidence that Ms. Bustamonte conveyed a possessory interest in the Ford Focus to either . . . Santos or . . . Ocegueda." Id. Indeed, the district court noted that "there [wa]s no evidence clarifying the relationship, if any, between . . . Ocegueda, . . . Santos, and Ms. Bustamonte." Id. Although Santos testified that Ocegueda had a possessory interest in the Ford Focus and in turn conveyed that possessory interest to Santos by giving him the keys to the vehicle when they arrived at the Lehi hotel and instructing him to drive it to a gas station to fill the tank, the district court found that this testimony was "insufficient to establish a possessory interest in the car or a reasonable expectation of privacy." Id. Ultimately, the district court found "there [wa]s no evidence to suggest that . . . Santos gained possession from the owner or someone with the authority to grant possession." Id.

Notably, defendants make no attempt on appeal to challenge, as clearly erroneous, any of these factual findings. Nor do defendants challenge the district court's related legal conclusion that they failed to meet their "burden to establish standing to challenge the search of the Ford Focus and the subsequent seizure of the methamphetamine." Id. at 26. Consequently, we affirm the district court's conclusion on this point.

Defendants suggest, however, that they each have alternative bases upon which they can seek suppression of the methamphetamine. For his part, Santos argues that he "is protected in the Tenth Circuit on the basis that a passenger whose Fourth Amendment rights were violated can suppress an item if it is the fruit of the poisonous tree, and there

7

was a nexus to the seized articles that would not be attenuated by [sic] inevitable discovery rule." Aplt. Br. at 27-28. It is true that even if a defendant "lacks the requisite possessory or ownership interest in a vehicle to directly challenge a search of that vehicle," he "may nonetheless contest the lawfulness of his own detention and seek to suppress evidence found in the vehicle as the fruit of [his] detention." Mosley, 743 F.3d at 1322-23 (internal quotation marks omitted). To suppress evidence on this basis, however, "a defendant must show, first, that he was seized in violation of his Fourth Amendment rights and, second, that a factual nexus exists between his unlawful seizure and detention and the challenged evidence." Id. at 1323 (internal quotation marks omitted). "Only if the defendant has made these two showings must the government prove that the evidence sought to be suppressed is not fruit of the poisonous tree." Id. (internal quotation marks omitted). In this case, Santos has failed to establish a factual nexus between his arrest and the seized methamphetamine. To be sure, his arrest occurred immediately prior to the search of the Ford Focus and the seizure of the methamphetamine. But his arrest did not lead, directly or indirectly, to the seizure of the methamphetamine. Indeed, the evidence in the record indicates that the methamphetamine would have been located and seized from the Ford Focus regardless of whether or not Santos was arrested. Thus, Santos has failed to establish that the methamphetamine "would not have come to light but for the government's unconstitutional conduct." United States v. DeLuca, 269 F.3d 1128, 1132 (10th Cir. 2001).

Ocegueda argues that, because he was directly involved in a recorded conversation with the CI, "he is an aggrieved party under Title III [(the Federal Wiretap Act)], and acquires standing per se." Aplt. Br. at 27. This argument, however, confuses standing to challenge the use of an intercepted oral communication with standing to challenge the search of a vehicle. And, as we have noted, Ocegueda failed to establish an ownership or possessory interest in the Ford Focus.

Lastly, although both defendants also purport to challenge the legality of their arrests, there is no indication in the record that those arrests resulted in any evidence that would be suppressed. In particular, the methamphetamine would have been seized regardless of their arrests. And defendants conceded in their motion to suppress that they "made no post arrest incriminating statements." Dist. Ct. Docket No. 70 at 4. As a result, the district court's memorandum decision and order did not address the subject of defendants' arrests.

AFFIRMED.


Entered for the Court


Mary Beck Briscoe
Chief Judge

9