**FILED**
**United States Court of Appeals**
**Tenth Circuit**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

**April 3, 2025**

_____

**Christopher M. Wolpert**
**Clerk of Court**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

MARK R. DAVIS,

    Defendant - Appellant.

No. 24-3164
(D.C. No. 2:11-CR-20020-JWL-2)
(D. Kan.)

_____

### ORDER AND JUDGMENT[*]

_____

Before **MATHESON**, **PHILLIPS**, and **McHUGH**, Circuit Judges.

_____

Mark R. Davis, a federal prisoner proceeding pro se, appeals the district court's denial of his request for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A), commonly known as compassionate release.[1] Exercising our jurisdiction under 28 U.S.C. § 1291, we affirm.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] Because Davis proceeds pro se, we liberally construe his filings, but we do not serve as his advocate. *See United States v. Pinson*, 584 F.3d 972, 975 (10th Cir. 2009).

## BACKGROUND

In 2012, a federal jury found Davis guilty of aiding and abetting Hobbs Act robbery, in violation of 18 U.S.C. §§ 1951, 2; aiding and abetting the use of a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii), 2; and aiding and abetting a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), (e), 2. The district court sentenced him to a total of 360 months' imprisonment.[2] On direct appeal, we affirmed his convictions. *United States v. Davis*, 750 F.3d 1186, 1194 (10th Cir. 2014), *cert denied*, 574 U.S. 1095 (2015). Davis's projected release date is February 6, 2037. Bureau of Prisons (BOP) Inmate Locator, BOP, https://www.bop.gov/inmateloc// (last visited Mar. 31, 2025). He is currently incarcerated in FCI Williamsburg. *Id.*

Since his incarceration, Davis has sought compassionate release three times.[3] In March 2021, Davis filed his first pro se motion for compassionate release. He argued that extraordinary and compelling reasons warranted a sentence reduction, because his medical conditions created an "elevated risk of

---

[2] The term of imprisonment consists of 96 months for aiding and abetting Hobbs Act robbery, 84 months for aiding and abetting the use of a firearm during and in relation to a crime of violence, and 180 months for aiding and abetting a felon in possession of a firearm. The sentence of imprisonment for each count is to be served consecutive to the sentences imposed for the other two counts.

[3] Davis also collaterally attacked his convictions and sentence under 28 U.S.C. § 2255 in 2016, 2020, and 2021. The district court denied his request each time.

harm" from the COVID-19 pandemic. R. vol. I, at 104. He listed his medical conditions as prediabetes, hypertension, an irregular heartbeat, and liver and gastrointestinal issues. The district court denied compassionate release, reasoning that "the virus is not running rampart at his place of incarceration[.]" *Id.* at 106. Instead, the district court concluded that there was no particularized risk of serious harm to Davis, because of the prison's safety measures, COVID-19 testing, vaccinations, and presence of only two active COVID-19 cases among inmates.

Then in January 2024, Davis moved for compassionate release again. But he conceded that he had failed to exhaust his administrative remedies, so the district court denied compassionate release on that basis.

In July 2024, Davis filed his third motion for compassionate release—the subject of this appeal. He argued that the following circumstances qualified as extraordinary and compelling reasons for a sentence reduction: (1) the continued threat of COVID-19 in tandem with his underlying medical issues; (2) the hardships created by COVID-19; (3) the effect of incarceration on his mental illnesses; (4) his family circumstances, particularly his need to care for his ailing grandmother; (5) his rehabilitation and good behavior; and (6) the sentence enhancements he received based on offenses he had committed during his youth. The government conceded that Davis had exhausted his administrative remedies but argued that none of these circumstances were extraordinary and compelling reasons for a sentence reduction.

3

The district court denied compassionate release. *United States v. Davis*, No. 2:11-CR-20020-JWL-2, 2024 WL 4436600, at *1 (D. Kan. Oct. 7, 2024). First, the district court concluded that none of his medical conditions met the definition of extraordinary and compelling reasons. *Id.* at *2. According to the district court, Davis's medical records demonstrated that he adequately managed his conditions while incarcerated. *Id.* Second, the district court determined that his family circumstances did not warrant compassionate release. *Id.* Though the district court acknowledged Davis's ailing grandmother, it concluded that Davis had failed to establish that he was the only available caregiver. *Id.* Third, Davis's argument that his sentence enhancements were based on criminal conduct during his youth failed to persuade the district court. *Id.* at *3. The district court stated that his age did not excuse his conduct and that his criminal record suggested that any criminal conduct during his youth was not an isolated incident. *Id.* Fourth, the court rejected his rehabilitation argument, noting that "rehabilitation alone is not an extraordinary and compelling reason for release." *Id.* And finally, the district court emphasized that even the combination of all his circumstances failed to qualify as extraordinary and compelling reasons. *Id.* Davis timely appealed.

## DISCUSSION

We review a district court's denial of compassionate release under § 3582(c)(1)(A) for abuse of discretion. *United States v. Hemmelgarn*, 15 F.4th 1027, 1031 (10th Cir. 2021). "A district court abuses its discretion when it

4

relies on an incorrect conclusion of law or a clearly erroneous finding of fact."

*Id.* (quoting *United States v. Battle*, 706 F.3d 1313, 1317 (10th Cir. 2013)). On

appeal, Davis asserts four grounds for reversal.[4] We start with the legal

standard and then analyze his arguments for compassionate release.

## I.    Legal Standard

Federal courts may not modify a term of imprisonment, save for a few

narrow exceptions. *Freeman v. United States*, 564 U.S. 522, 526 (2011) (citing

18 U.S.C. § 3582(c)). One such exception to this "rule of finality" is

compassionate release under 18 U.S.C. § 3582(c)(1)(A). *Id.* Section

3582(c)(1)(A) permits a defendant to move for compassionate release after

exhausting administrative remedies.[5]

Upon administrative exhaustion, a district court may grant compassionate

release only if the defendant meets three requirements under § 3582(c)(1)(A).

*United States v. Maumau*, 993 F.3d 821, 831 (10th Cir. 2021). First, the district

court must find that "extraordinary and compelling reasons warrant a sentence

reduction." *Id.* (internal quotation marks omitted). Second, the court must

---

[4] Though Davis lists a fifth ground—"rehabilitation and clear conduct"—he provides no argument on his rehabilitation. Op. Br. at 2. We therefore decline to consider this issue. *See United States v. Walker*, 918 F.3d 1134, 1151 (10th Cir. 2019) ("[A]rguments may be deemed waived when they are advanced in an opening brief only in a perfunctory manner." (cleaned up)).

[5] The government concedes that Davis had properly exhausted his administrative remedies before he moved for compassionate release in the district court.

determine that "such reduction is consistent with *applicable* policy statements issued by the Sentencing Commission." *Id.* (internal quotation marks omitted). Third, the district court must consider the sentencing factors under 18 U.S.C. § 3553(a) and determine whether the defendant's particular circumstances warrant a sentence reduction.[6] *Id.* And the district court may deny compassionate release if the defendant fails to meet even one requirement, without addressing the other two requirements. *United States v. McGee*, 992 F.3d 1035, 1043 (10th Cir. 2021).

Under the second requirement, we look to the Sentencing Commission's policy statement on compassionate release. U.S.S.G. § 1B1.13. The policy statement recognizes six categories of "extraordinary and compelling reasons" justifying compassionate release: (1) certain medical circumstances of the defendant; (2) a combination of advanced age, deteriorating health, and a significant term of imprisonment already served; (3) compelling family circumstances; (4) sexual or physical abuse committed by correctional staff against the defendant; (5) other reasons that are similar in gravity to the prior

---

[6] The § 3553(a) factors are (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) the need for the sentence imposed to "reflect the seriousness of the offense," deter future crime, protect the public, and effectively provide the defendant with treatment; (3) "the kinds of sentences available"; (4) "the kinds of sentence and the sentencing range established for" the offense at the time of sentencing; (5) certain policy statements issued by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among" similarly situated defendants; and (7) the need for victim restitution. 18 U.S.C. § 3553(a).

four categories of extraordinary and compelling reasons; and (6) an unusually long sentence, combined with the defendant having served at least ten years and a subsequent change in law producing a gross sentencing disparity. § 1B1.13(b). With these standards in mind, we turn to Davis's appeal.

## II.    Analysis

Davis challenges the district court's denial of compassionate release on four grounds. First, he argues that his underlying medical conditions increase his risk of severe COVID-19. Second, he claims that the COVID-19 pandemic caused him to serve his sentence under unduly harsh conditions. Third, he contends that the district court improperly disregarded the Sentencing Commission's new guidelines for youthful offenders when it evaluated his request for compassionate release. Fourth, he asserts that his family circumstances warrant a sentence reduction, because he needs to care for his ailing grandmother. We review each ground and conclude by reviewing the combination of the asserted grounds.

### A.    Medical Conditions

First, Davis claims that his medical conditions substantially increase his risk of contracting severe COVID-19. The district court identified his conditions as anxiety disorder, post-traumatic stress disorder, antisocial personality disorder, hypertension, hypermetropia, hyperlipidemia, gastroesophageal reflux, cardiac arrhythmia, prediabetes, and presbyopia. *Davis*, 2024 WL 4436600, at *2. But the district court concluded that he failed

7

to meet the policy statement's definition of extraordinary and compelling reasons in relation to his medical conditions. *Id.*

The applicable policy statement lists four medical circumstances that qualify as extraordinary and compelling: (1) a terminal illness, (2) a serious medical issue that substantially diminishes a defendant's ability to self-care within a correctional facility, (3) a medical condition requiring long-term or specialized care that is not being provided and without which the defendant risks serious deterioration in health or death, and (4) personal health factors and custodial status that create an increased risk of suffering severe medical complications or death from exposure to an ongoing outbreak of infectious disease. § 1B1.13(b)(1). We agree with the district court that Davis meets none of these circumstances.

Davis does not argue that his conditions are terminal, seriously diminish his ability to self-care, or require long-term or specialized care that the facility has not provided. Instead, he focuses on the fourth medical circumstance— increased risk of severe medical complications from an ongoing outbreak of infectious disease. For this scenario, § 1B1.13(b)(1)(D) states that a defendant presents extraordinary and compelling circumstances if he meets the following requirements:

> (i)    the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;

8

(ii)    due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and

(iii)    such risk cannot be adequately mitigated in a timely manner.

Davis fails to meet these requirements. Even assuming his medical conditions increase his risk of severe COVID-19, he cannot show that an ongoing outbreak of infectious disease affects his correctional facility or that there is an ongoing public health emergency. § 1B1.13(b)(1)(D)(i). As of January 21, 2025, there were only three active COVID-19 cases in FCI Williamsburg.[7] *See Inmate COVID-19 Data*, BOP, https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp#lastestCovidData (last visited Mar. 31, 2025). And Davis presents no evidence that any outbreak has occurred since then. Moreover, no federal, state, or local authority has declared a public health emergency in relation to COVID-19 since May 11, 2023, when the federal public health emergency for COVID-19 ended. *See COVID-19 Public Health Emergency*, U.S. Dep't of Health & Human Servs., https://www.hhs.gov/coronavirus/covid-19-public-health-emergency/index.html (last visited Mar. 31, 2025); Exec. O. 2021-25 at 9, 13, S.C. Off. of the Governor (May 22, 2021) (declaring a state of emergency for COVID-19, which expired after fifteen days without extension). Because Davis fails to show any ongoing

---

[7] Davis mailed his opening brief on January 8, 2025.

outbreak of COVID-19 in his prison or any ongoing public health emergency, his medical conditions do not qualify as extraordinary and compelling reasons under § 1B1.13(b)(1)(D).

### B.    Harsh Prison Conditions

Next, Davis argues that harsh prison conditions during the COVID-19 pandemic warrant a sentence reduction. He details how the prison's COVID-19 restrictions affected his mental health in his opening brief and in his brief to the district court.[8] Section 1B1.13(b) does not list unduly harsh prison conditions as an extraordinary and compelling reason. So we review this argument under § 1B1.13's catchall provision:

> The defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in [§ 1B1.13(b)(1)–(4)], are similar in gravity to those described in [§ 1B1.13(b)(1)–(4)].

§ 1B1.13(b)(5).

Davis describes how the facility's COVID-19 lockdown policies triggered two severe anxiety attacks and resulted in harsher prison conditions. Though we are sympathetic to the mental illnesses that Davis must manage, these conditions fail to rise to the level of extraordinary and compelling reasons

---

[8] The district court never directly addressed this argument for compassionate release. *See Davis*, 2024 WL 4436600, at *3 (stating that the combination of Davis's circumstances fails to qualify as an extraordinary and compelling reason for compassionate release). But we may affirm the district court's order on any ground supported by the record. *Jordan v. U.S. Dep't of Justice*, 668 F.3d 1188, 1200 (10th Cir. 2011).

for a sentence reduction. His medical records show that he takes his prescribed medications to treat his disorders, and he never alleges that the BOP provides inadequate treatment. R. vol. I, at 200 (stating that Davis "appeared to be doing well clinically," "reported compliance with medication," and "reported that his mood was good"). His medical records also reveal that at least two of his diagnoses predated the onset of COVID-19. *Id.* at 225 (showing that Davis has had anxiety disorder and post-traumatic stress disorder since 2016). Under these circumstances, we cannot conclude that Davis's prison conditions are so harsh that they "are similar in gravity" to the circumstances described in § 1B1.13(b)(1)–(4), which include terminal illness and age-related health deterioration that prevents self-care. § 1B1.13(b)(5). His prison conditions fail to qualify as extraordinary and compelling reasons for compassionate release.

### C.    Youthful Offender Guideline

Davis also argues that recent amendments to the sentencing guidelines created a more lenient standard for sentencing youthful offenders, such that he received unwarranted sentence enhancements for crimes that he had committed during his youth. *See* U.S.S.G. § 5H1.1. This argument fails for several reasons.

First, the district court denied Davis's request for compassionate release before the referenced amendments went into effect. *Id.* (effective Nov. 1, 2024). The district court therefore had no authority to apply the amended version of § 5H1.1 to Davis's compassionate-release request.

Second, even if we consider the amended version of § 5H1.1, that guideline is irrelevant to Davis's circumstances. All of Davis's prior convictions were for state crimes, meaning the federal guideline would not have applied to any of his past convictions. *Id.* ch. 1, pt. A (stating that the guidelines deal with "sentencing offenders convicted of federal crimes"). And the underlying offense conduct in this case occurred when he was 33 years old and therefore past the age of youthful-offender status. § 5H1.1 (acknowledging risk factors that affect a youthful individual's development into the mid-20's). To the extent that Davis claims he would have received a downward departure at sentencing for his federal conviction due to his "youthfulness at the time of . . . [his] prior offenses," such argument is too speculative and does not rise to the level of an extraordinary and compelling reason. *Id.*; *cf.* § 1B1.13(c) ("Except as provided in [§ 1B1.13](b)(6), a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement."). So § 5H1.1 does not apply to Davis.

### D.    Family Circumstances

Davis also argues that his family circumstances qualify as extraordinary and compelling. He cites the need to care for his ailing grandmother and asserts that no other person could serve as her caregiver. The district court concluded otherwise. *Davis*, 2024 WL 4436600, at *2. It stated that the family's "strong

preference" for Davis to care for his grandmother failed to establish that he was the "only" available caregiver under the policy statement. *Id.* (internal quotation marks omitted).

Section 1B1.13(b)(3)(D) provides that the incapacitation of a grandparent may qualify as an extraordinary and compelling reason if the defendant is the only available caregiver for that grandparent. Unfortunately, between the district court's denial of compassionate release and this appeal, Davis's grandmother passed away. Under these circumstances, his basis for compassionate release is now moot.

### E.    Combination of Circumstances

Last, the district court concluded that the combination of circumstances still failed to qualify as an extraordinary and compelling reason for compassionate release. *Id.* at *3; *see* § 1B1.13(b)(5) (permitting a district court to consider whether a "combination of circumstances" is extraordinary and compelling). We agree. Based on the above discussion, we conclude that the district court acted within its discretion to deny compassionate release.

### CONCLUSION

For these reasons, we affirm.

Entered for the Court

Gregory A. Phillips
Circuit Judge

13